ALFRED ANDREAS *et al.*

*v.*

ISAAC J. KETCHAM.

1. PRACTICE—*remarks of judge upon the facts, improper.* Although the knowledge of the judge trying a case may be superior to that of the witnesses in respect to facts in issue, yet the law does not permit him to bias the jury by his own opinion as to any disputed fact which is required to be proved.

2. EVIDENCE—*province of court and jury in respect thereto.* It is the duty of the court to determine what evidence is proper to go to the jury upon the issues involved, and to instruct them as to the law; but the jury are the sole judges of the weight to be given to the evidence bearing upon the issues, and their verdict must be based upon the evidence, and not upon the opinion of the presiding judge.

3. INSTRUCTION—*must be predicated upon evidence.* It is erroneous to give an instruction based upon a state of fact, where there is no evidence in the case tending to prove the same.

4. EVIDENCE—*relevancy.* Where a written contract of subscription for a map of a county contains no provision whatever for inserting the business card of the subscriber, the fact whether such business card, as inserted, is correct or not, is wholly immaterial as a defense to a suit on the contract against the subscriber.

5. SUBSCRIPTION—*for county map—what may be shown in defense of suit on.* If a party is sued upon his subscription for a county map, he may show in defense that the map is incorrect.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. E. M. SANFORD, for the appellants.

Mr. I. J. KETCHAM, *pro se.*

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action, originally commenced before a justice of the peace, by appellants, to recover of appellee the sum of $89, claimed to be due for one map of Morgan county, a view of appellee's residence contained in the map, and one hundred extra views of the residence.

Appellants obtained a judgment before the justice. Appellee appealed to the circuit court of Morgan county, where a trial was had before a jury, which resulted in a verdict in favor of appellee.

The court overruled a motion for a new trial, and rendered judgment upon the verdict.

Appellants based their right of recovery upon the following contracts offered in evidence:

"$74.00. JACKSONVILLE, *May* 7, 1872.

"In consideration for causing a twelve-inch view of my residence to be printed in their atlas map of Morgan county, Illinois, I promise to pay Andreas, Lyter & Co. seventy-four dollars, payment to be made on or before the first day of September next; this order not to be assigned. Address, Jacksonville, Ill. 24 extra views to be given, on delivery of maps. 100 extra views at 6 cents apiece.

"I. J. KETCHAM.

"We, whose names appear below, do agree to take from Andreas, Lyter & Co. one copy of their atlas map of Morgan county, Illinois, for which we agree to pay to them or their order the sum of nine (9) dollars, payment to be made on delivery of maps at our residences or places of business.

"I. J. KETCHAM."

And the following notice, to-wit:

"The agent presenting this book is *a special agent, and is only authorized to receive subscriptions to the agreement herein printed.* "ANDREAS, LYTER & CO."

A pencil sketch of appellee's residence, with his approval (in words following, "I hereby approve of my sketch. I. J. Ketcham,") was introduced in evidence.

The defense interposed by appellee to the contract providing for a view of his residence to be printed in the map, was, that the view was incorrect.

The defense made to the contract for the map was, that appellee's place of business, as published in a business card inserted in the map, was located at the wrong place.

It was purely a question of fact, for the jury to determine from the evidence, whether the view of appellee's residence was correct, or whether, as sketched, it was approved by him, and as there was a conflict of evidence upon this branch of the case, had there been no error in the ruling of the court, we would not disturb the verdict. But after the evidence had been submitted to the jury, the attorney for appellee, as appears from the record, submitted to the court the following question: "Whether or not His Honor would know the view to be the residence of defendant, were defendant's name taken from the view." The court replied, " I do not know that I would."

We are aware of no rule of law or practice that would allow the presiding judge to give to the jury his opinion on a controverted question of fact.

The knowledge of the judge on the question at issue may have been superior to that of any witness sworn, yet the law would not permit him to bias the jury by his own opinion as to any fact in controversy which had to be established by evidence.

It was the duty of the presiding judge to determine what evidence was proper to go to the jury on the issue involved, and to instruct them as to the law, but they were the sole judges of the weight to be given to the evidence bearing upon the issue in the case, and their verdict must be based upon the evidence, and not on the opinion of the presiding judge.

The opinion of the judge, given, as it was, before the jury, upon a question of fact which was controverted, could not do otherwise than prejudice the jury against appellants.

The laws guarantee to all a fair and impartial trial, and courts are organized for the purpose of seeing that the laws are administered in such a manner that justice will be done to all. In cases where the jury have the sole power to deter-

mine questions of fact from the evidence, the law can not be properly administered and justice done parties in litigation, if the judge presiding, after the evidence is closed, gives to the jury his own opinion on a question of fact.

It is, however, said by appellee that the verdict of the jury was made from the evidence, and not from the answer given by the court to the question submitted.

We have, however, no means of knowing that fact. . The statement made by the judge went to the jury, as well as the evidence. The verdict followed. It is quite as reasonable to presume that the minds of the jury were influenced by the statement as by the evidence.

In addition to the question just alluded to, it is urged by appellants that the court erred in giving instructions for appellee, the first of which is as follows:                .    .   :

"The court instructs the jury, for the defendant, that in regard to the item for the map sued on in this case, if the jury find, from the evidence, that the plaintiff, at the time the defendant subscribed for said map, agreed to insert in the said map a business card for the defendant, and as a part of the consideration of said subscription, and that it was agreed that the card should properly describe the place of business of defendant, then, in law, to enable the plaintiff to recover on said item, they must have inserted said business card substantially as agreed upon, and properly described the place of business of the defendant substantially as agreed upon. And if the jury find, from the evidence, that the defendant's place of business was incorrectly described, as in another and different part of the city of Jacksonville from where the defendant's place of business actually was, the jury should find for the defendant as to such item, if they further believe the mistake was made by the plaintiffs, and not by the defendant in giving the description of the place of business."

This instruction was calculated to mislead the jury. The record does not show that an agreement was made to insert a

business card in the map, and hence there was no evidence before the jury upon which to predicate the instruction.

The subscription contract signed by appellee, upon which the suit was based, contains no promise whatever in regard to a business card.

It also appears that the agent who obtained the name of appellee as a subscriber for a map, was not authorized to enter into contracts other than the one signed by appellee. Under such circumstances, while it would have been proper for appellee to have ·shown, as a defense, that the map, as an atlas map of Morgan county, was incorrect, yet we fail to see in what manner the business card of appellee, whether correct or incorrect, could affect the rights of the parties under the contract introduced in evidence.

For the errors indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*