ELIJAH P. CHASE, administrator, *vs.* JOSEPHUS W. HORTON.

Bristol.   Oct. 27. — Nov. 26, 1886.   DEVENS & W. ALLEN, JJ., absent.

After a conveyance of real estate, declarations of the grantor in disparagement of his grant, made in the absence of the grantee, are not admissible in evidence against the latter.

A party to an action is not entitled to have a request for a ruling granted, which assumes facts of which there is no evidence at the trial.

If a father makes a deed of real estate to his son in good faith, and without any intent to defraud creditors, it is not conclusive evidence of fraud, sufficient to avoid the deed, that the son permits the father to occupy the premises in any way to his benefit.

WRIT OF ENTRY, dated May 15, 1885, by the administrator of the estate of Joseph G. Horton, to recover a parcel of land in Rehoboth.  Plea, *nul disseisin.*  Trial in the Superior Court, before *Hammond,* J., who allowed a bill of exceptions, in substance as follows :

The demandant showed title to the demanded premises in said Joseph G. Horton from his brother, Levi Horton, by a will admitted to probate on March 6, 1860; his own appointment as administrator of the estate of Joseph G. Horton on November 7, 1884; a license issued to him by the Probate Court, authorizing him to sell the whole of the real estate of Joseph G. Horton for the payment of his debts and the charges of administration, dated May 5, 1885; and a formal entry made by the demandant, as administrator of Joseph G. Horton, on the demanded premises, before bringing this action.

The tenant, who was the son of Joseph G. Horton, put in evidence a deed of the demanded premises from Joseph G. Horton to the tenant, dated August 20, 1878, which contained full covenants of warranty.

The demandant offered evidence tending to show that Joseph G. Horton continued to occupy and improve the demanded premises from shortly after the probate of the will of Levi Horton until his death, on August 11, 1883, and, after the deed given by him to the tenant, in the same manner as before, as a homestead; that, at the date of said deed, Joseph G. Horton owed the demandant and divers other persons, who had, before the date of the deed, pressed him for payment, and he had failed to make payment; that when so pressed, before said deed was given, upon the premises demanded, he informed the various creditors that he had not the money to pay with, but that there was ample property there to pay all debts; that if he did not pay them, his son, the tenant, would see that they were paid.

The demandant offered the evidence of William W. Cowing and Levi L. Cummings, to the effect that they called together upon Joseph G. Horton, at his homestead, shortly after the deed was given by him to the tenant, and, on the premises, demanded payment of certain debts due them respectively, for the payment of which they had also called before the date of said deed; and that Joseph G. then told them that he had property enough there to pay all his debts, that he gave the deed to the tenant to prevent his creditors from turning him out of doors, that he could not pay them, but his son would pay all these bills, and that they could go up and see him. This evidence the judge excluded, the demandant excepting.

The demandant put in evidence, without objection, that said Cowing and Cummings went directly from the premises of Joseph G. Horton to the residence of the tenant, and there asked him to pay their bills against Joseph G.; that the tenant replied: "If I owe you anything, I will pay you, but I shall not see the old man turned out of doors. If there is anything left after the old man gets through, we will divide."

The demandant also offered the evidence of his son, John W. Chase, to the effect that, shortly after the deed to the tenant was given, the witness, for his father, went to the homestead of

Joseph G. Horton, and there demanded payment of his father's bill, stating to Joseph G. that he had heard that he had given the tenant a deed of the premises ; that Joseph G. replied that he had, that the tenant would pay all the creditors, that he had there property enough to pay all the creditors, that they would not lose anything, and that he gave the deed to the tenant to prevent his creditors from turning him out of doors.   This evidence was also excluded.

It appeared that the demandant and said Cowing and Cummings were creditors of the estate of Joseph G. Horton.

The judge refused to admit any and all of the statements of Joseph G. Horton after giving the deed to the tenant, except such as were made in the presence of the tenant.

The tenant testified that, at the time he took the deed of the farm from his father, he did not know of his father's owing any debts ; that he had lent to his father considerable sums of money, — more than the value of the farm, — and bought it of him in good faith, and paid his father $100 at the time of the purchase, besides the previous indebtedness ; that he allowed his parents, who were advanced in years, to live on the farm after he bought it, but that, from the time of the purchase, he paid the taxes and carried on the farm for his own benefit, except one year, when he let it to one Simmons, who was a grandson of said Joseph G. and lived with his grandfather, and who carried on the farm and allowed his grandparents to live there ; that the tenant assumed a mortgage on the farm ; and that his father had no control of it from the time of the sale, and no interest in the farming.

It was also shown that the father had been in failing health for several years before the sale of the farm ; and that, from the time of the sale until his death, his health continued feeble.

Several witnesses testified to having seen the tenant lend money to his father in considerable sums, within a year before the purchase of the farm, and at the time of the sale.

The tenant offered evidence tending to show what his father had done with some of the money which he had got from him ; that his father had lost some of it in loans, but had applied most of it in the support of his wife and himself, as he was able to earn but little money on account of his poor health.

It appeared that, when the deed to the tenant was executed and delivered, on August 20, 1878, there was a mortgage on the land described therein in favor of one Case, the deed of which had been delivered to Case on August 8, 1878, and a mortgage note given by Joseph G. Horton on the same day to Case for $214, with interest at the rate of eight per cent per annum payable annually; and that this mortgage and note were still outstanding.

The demandant asked the judge to rule as follows : " 1. Where a grantor executes a deed to his son of his homestead where he is living, and, after delivering the deed, continues in the use and occupation of the homestead as before, and afterwards, while in such occupation, he refers creditors holding claims against him, existing prior to the date of the deed, to his son, who thereupon, in conversing with them, admits the purpose of the deed to be to protect the father from his creditors, the statements of the father while in possession of the land and on the premises, but not in the presence of the son, referring such creditors to the son for payment, are competent against the son in impeaching his title. 2. If the purpose of the conveyance to the son was to delay, defraud, or defeat other creditors of the father, and the son participated in this intent, whether the deed was voluntary, that is, without consideration, or for a consideration past or present, it is void against the claims of creditors, or of the administrator duly authorized to sell all his real estate for payment of debts. 3. If at the time of the delivery of the deed by Joseph G. Horton, the father, to Josephus W. Horton, the son, there was any agreement or understanding between them by which the land thus conveyed would continue to be held and enjoyed by Joseph G. Horton as he had formerly held and enjoyed it, or in any way to his, said Joseph G. Horton's benefit, the conveyance is void as against the creditors of Joseph G. Horton or this administrator."

The judge gave the second instruction requested, but refused to give the first and third.

The jury returned a verdict for the tenant ; and the demandant alleged exceptions.

*Charles A. Reed & J. H. Dean,* for the demandant.

*M. Reed,* for the tenant.

MORTON, C. J. The rule of law is well settled, that, after a conveyance of real estate, the declarations of the grantor in disparagement of his grant, made in the absence of the grantee, are never admissible in evidence against the grantee. *Winchester* v. *Charter*, 97 Mass. 140. *Roberts* v. *Medbery*, 132 Mass. 100, and cases cited. The court, therefore, rightly excluded the declarations of Joseph G. Horton, offered by the demandant.

The first ruling requested by the demandant was properly refused, because it assumes that the tenant admitted that the deed to him was given to protect the father from his creditors, of which there was no evidence.

The third ruling requested was also properly refused. The court instructed the jury, in accordance with the second request of the demandant, that, "if the purpose of the conveyance to the son was to delay, defraud, or defeat other creditors of the father, and the son participated in this intent, whether the deed was voluntary, that is, without consideration, or for a consideration past or present, it is void against the claims of creditors, or of the administrator duly authorized to sell all his real estate for payment of debts."

It would be erroneous to instruct the jury, as the third request of the demandant imports, that, if a father makes a deed to his son in good faith, and without any intent to defraud creditors, it would be conclusive evidence of fraud which would avoid the deed, if the son permits the grantor to occupy the premises in any way to his benefit. *Exceptions overruled.*