DAVIS VS FIRST NATIONAL BANK OF WEWOKA.

Opinion delivered October 27, 1905.

(89 S. W. Rep. 1015).

1. *Witnesses—Contradiction—Evidence.*

Where a witness testified through an interpreter to facts different

from those which he had previously affirmed in an ex parte affidavit taken through another interpreter, who acted as agent for both parties, such affidavit was admissible to contradict the witness, though the interpreter so employed was not sworn.

(Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1248, 1255).

2. *Same—Writings—Letters.*

Where, in replevin to recover a wagon, C. denied the testimony o a witness that, when he went to take the wagon under a chattel mortgage held by defendant, C. handed him a certain letter and asked him to give it to plaintiff, the letter was admissible in evidence to contradict C.'s statement that he did not give it to the person who took the wagon.

(Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1248-1249).

3. *Bailment—Personal Property—Possession—Ostensible Ownership.*

Where plaintiff delivered to C. a wagon in controversy to keep and use until plaintiff and C. consummated an agreement for the letting of certain land, and plaintiff permitted C. to keep possession of the wagon and use it as his own for over a year, during which he mortgaged it to defendant, plaintiff was thereby estopped as against defendant from recovering the same.

Appeal from the United States Court for the Western District of the Indian Territory; before Justice Chas. W. Raymond, February 12, 1904.

Replevin by Alice B. Davis against the First National Bank of Wewoka, Ind. T. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

On July 10, 1903, the plaintiff filed her complaint at law against the defendant, and alleged that she is the owner and entitled to the possession of one new, two-horse Springfield wagon of the value of $75, and one set of leather double harness

of the value of $30, of which defendant has possession without right, and has unlawfully detained same from plaintiff since April 1, 1903, claiming the right to apply same to payment of its debt against George Cloud; and plaintiff asks judgment for said property and for $40 damages. The defendant for answer denies the allegations of plaintiff's complaint, and asks to be dismissed with its costs. On February 11, 1904, said cause was tried before a jury, who returned a verdict for the defendant. A motion for new trial was made and overruled by the court, and plaintiff appealed to this court. Defendant objects to the transcript of the record, because the same does not set out the judgment of the lower court, but upon application of appellant writ of certiorari was granted, and said judgment was properly certified by the clerk of the court below, and same was filed as part of the record in this cause January 7, 1905.

*McKennon & Willmott*, for appellant.

*Crump & Rogers*, for appellee.

TOWNSEND, J. (after stating the facts). The appellant has filed four specifications of error, as follows: "(1) The court erred in permitting to be read in evidence, over plaintiff's objection, the affidavit of George Cloud, dated September 7, 1903. (2) The court erred in permitting to be read in evidence, over the objection of plaintiff, the letter, of date March 6, 1903, addressed to Mrs. A. B. Davis, and purporting to be signed by George Cloud. (3) The court, as part of its instructions to the jury (which are set out in full in the Record, 9), over objection of plaintiff, said: 'However, if a trade was pending between plaintiff and George Cloud, by the terms of which Cloud was to receive from plaintiff a wagon when he should give her a lease upon his land, and the plaintiff allowed him to take the wagon in controversy, and use it in such a way as that third persons

were led to believe that it was Cloud's property, and, while it was being so used by Cloud, the defendant took a mortgage upon it to secure the payment of a debt owing by Cloud to defendant, knowing nothing of the rights of Davis, plaintiff would be estopped from asserting her title to the wagon as against defendant, and defendant might hold it as against her under its mortgage.' (4) The court erred in overruling plaintiff's motion for a new trial, in so far as that motion was based upon the ground that the verdict was contrary to the evidence."

The alleged error assigned in the first specification is that the affidavit of George Cloud was allowed to be introduced to contradict the testimony of said Cloud given at the trial. The affidavit was made on September 7, 1903, and the trial took place on February 11, 1904. On the trial said Cloud testified through an interpreter by the name of Caesar Bowlegs, and he stated. "I don't understand English much," and upon cross-examination he says, "I did not make the statements contained in the affidavit presented to me, dated September 7, 1903," and sworn to on said date before the clerk of the court. It appears that, when Cloud made the affidavit, he used one Isaac Bottley as interpreter, who was not sworn; and appellant contends, by reason of that fact, that said affidavit, therefore, embodies only statements which Bottley claims that Cloud made to him on the subject, and is purely hearsay evidence, and was therefore inadmissible for any purpose.

Appellant, in support of her contention, cites the case of State vs Noyes, 36 Conn. 80, 4 Am. Rep. 37, as follows: "A foreigner, ignorant of the English language, had testified through an interpreter as to certain facts, and on cross-examination had denied stating the facts differently. The opposing party then offered a witness to testify that some time before

the trial the foreigner had, through an interpreter, stated some of the facts differently. to him. Held, that the interpreter used on that occasion must be called as to what the foreigner said, and that the witness, who heard it only through the interpreter, could not testify to it." It does not appear that the case cited is parallel with the case at bar. In the case cited, when the witness upon cross-examination "had denied stating the facts differently," the opposing party offered a witness to testify that some time before the trial the witness had, through an interpreter, stated some of the facts differently to him. Held, that the interpreter should be called, and that the witness, who heard it through the interpreter, could not testify to it. In the case at bar the sworn affidavit of the witness was presented to him, and appellant contends that he cannot be contradicted by the introduction of his own affidavit, because the interpreter at the time of making the affidavit was not sworn. In 1 Greenleaf on Evidence, § 183, it is said: "This principle extends to the case of an interpreter whose statements of what the party says are treated as identical with those of the party himself, and therefore may be proved by any person who heard them, without calling the interpreter." And in Commonwealth vs Vose, 157 Mass. 394, 395, 32 N. E. 355, 17 L. R. A. 813, the court says: "The defendant excepted to the admission in evidence of a conversation between him and the deceased person carried on through an interpreter; he speaking English and she French, and the witness understanding only French. When two persons, who speak different languages, and who cannot understand each other, converse through an interpreter, they adopt a mode of communication in which they assume that the interpreter is trustworthy, and which makes his language presumptively their own. Each acts upon the theory that the interpretation is correct. Each impliedly agrees that his language may be received through the interpreter. If nothing

appears to show that their respective relations to the interpreter differ, they may be said to constitute him their joint agent to do for both that in which they have a joint interest. They wish to communicate with each other. They choose a mode of communication. They enter into conversation, and the words of the interpreter, which are their necessary medium of communication, are adopted by both, and made a part of their conversation as much as those which fall from their own lips. They cannot complain if the language of the interpreter is taken as their own by any one who is interested in the conversation. Interpretation under such circumstances is prima facie to be deemed correct. How far either would be bound by it, if the interpreter should prove false, may depend on a variety of circumstances, which it is unnecessary in this case to consider. In a case like the present, we are of the opinion that either party, or a third person who hears the conversation, may testify to it as he understands it, although for his understanding of what was said by one of the parties he is dependent on the interpretation which was a part of the conversation. The fact that a conversation was had through an interpreter affects the weight, but not the competency, of the evidence." See, also, Camerlin vs Palmer Co., 10 Allen, 539; Fabrigas vs Mostyn, 20 Howell's State Trials, 123. It is asserted by appellant that Bottley was acting as agent of the defendant at the time the affidavit was made, but there is no evidence in the record that justifies such a conclusion. Cloud had mortgaged the property to the defendant, and the defendant wanted a statement from Cloud of the facts, and hence the affidavit was made; and, so far as appears from the record, Bottley was as much the agent of Cloud as of the defendant. Appellant cites cases where the interpreter was engaged in the trial of a lawsuit or the taking of a deposition. In such cases it is necessary for him to be sworn, as he is really an

officer of the court.    But, where he acts as the agent of the parties, he is not required to be sworn.    We are, therefore, of the opinion that the affidavit was admissible.

The second specification of error alleged is the admission by the court of a certain letter purporting to be signed by Cloud.    The record discloses that upon the trial of the cause, and upon the cross-examination of Cloud, a certain letter was presented to Cloud, and he testified as follows: "I did not write the letter addressed to Mrs. Davis here shown to me. Do not know anything about what is in it?    I did not sign it. Did not give it to the man who took the wagon from my house." The defendant upon the trial introduced as a witness William Meadows, who testified as follows: "As agent of the bank, I went to the old Cloud place.    George Cloud did not live there then, but was there.    He lived about a mile away.    I had his mortgage and note to the bank, and asked him where the wagon was.    He told me it was at his home.    There was a woman there, and she wrote a letter to Mrs. Davis, here shown me, with George Cloud's name to it, and George Cloud handed it to me and told me to give it to Mrs. Davis.    I told him that I would leave it at the bank and they would give it to her." When Cloud handed the letter to Meadows and told him to give it to Mrs. Davis, we think it was properly admitted to contradict his statement that he did not give it to the man who took the wagon from his house.

The third specification of error assigned was the giving of a certain instruction to the jury.    The court instructed the jury, among other things not complained of, as follows: "If the plaintiff purchased the wagon and harness, and has never parted with the title thereto, then they were her property, and, if the defendant took them and held them, she would have a right to recover against him the property, if found;

if not, the value of the property and her damage for their detention. However, if a trade was pending between plaintiff and George Cloud, by the terms of which Cloud was to receive from plaintiff a wagon when he should give her a lease upon his land, and the plaintiff allowed him to take the wagon in controversy, and use it in such a way as that third parties were led to believe that it was Cloud's property, and, while it was being so used by Cloud, the defendant took a mortgage upon it to secure the payment of a debt owing by Cloud to defendant, knowing nothing of the rights of Davis, plaintiff would be estopped from asserting her title to the wagon as against defendant, and defendant might hold it as against her under its mortgage. The declarations or statements of George Cloud as to his ownership of the wagon, made in the absence of plaintiff, could not bind her; and such statements can only be considered by you for purposes of impeachment of said Cloud." The plaintiff testified that Cloud had been using the wagon about one year, when it was taken from him by the defendant. "I agreed with him that he could keep and use the wagon until we consummated an agreement which we had talked of, in which he was to give me a lease upon part of his land and I was to buy him a new wagon, when the papers were written up and signed. He was to do my hauling and get my firewood for me for the use of the wagon and harness. We have never consummated the trade for the lease." It is conceded that the plaintiff let Cloud have the wagon into his possession, and that he kept and retained the possession for a year, that in the meantime he had mortgaged the same to the defendant, and defendant had foreclosed its mortgage and disposed of the property. It also appears from the testimony of the plaintiff that Cloud could keep and use the wagon until we "consummated an agreement which we had talked of."

Cloud's affidavit, which was admitted to contradict his testimony on the trial, was as follows:

"George Cloud, being duly sworn, states: That on the ———— day of March, 1902, I bought one Springfield wagon from Mrs. A. B. Davis, agreeing to give her therefor as purchase price a lease on my allotment consisting of 40 acres of sand. I took possession of the wagon, and have been ready ever since to make the contract, but have never done so. I had possession of the wagon on the 2d or 3d day of June, 1902, when I came to Wewoka, I. T., and mortgaged same to the First National Bank [of Wewoka, I. T. I still remained in possession of the wagon until the ———— day of April, 1903, when I turned the wagon over to the First National Bank to satisfy an indebtedness due them which they held a mortgage on said wagon. Mrs. A. B. Davis has been trying to get me to say that the wagon belonged to her, but I would not do so. Mrs. Davis still says she wants the land. Mrs. Davis has never demanded the wagon of me, although I have had it for over a year. Since I mortgaged the wagon, she now wants 80 acres of land, instead of 40. This affidavit was read to me by the United States clerk at Wewoka. I understand the contents.
"(Signed)                                    George Cloud.

"Subscribed and sworn to before me this 7th day of September, 1903. I hereby certify that the above affidavit was read by me to George Cloud before he signed his name, and he states that the same was true, this 7th September, 1903.

"(Signed)   R. P. Harrison, Clerk,

"By R. A. Bayne, D. C."

The contention of appellant is that there was nothing in the evidence to warrant the giving of the instruction, to which objection was made, and appellant cites the following authorities: In 11 Enc. Pl. & Pr. 128, it is said: "It is error for the court in instructing the jury to assume the existence of

facts in support of which there is no evidence. This constitutes a direct perversion of the testimony offered in court. But the assumption of a fact by the court is materially different from giving instructions to the jury without any evidence to support them. To assume a fact is to state as proved that which is to be proved, as, 'if the jury find that after the sale,' assumes the fact of the sale, and was therefore erroneous. But, to instruct the jury upon an hypothesis of which there was no evidence, is to leave them to assume or find that for which there was no foundation." Little Rock, etc., Ry. Co. vs Wells, 61 Ark. 354, 33 S. W. 208, 30 L. R. A. 560, 54 Am. St. Rep. 216; Foster vs Pitts, 63 Ark. 387, 38 S. W. 1114. In Thompson on Trials, vol. 11, § 2295, p. 1646, it is said that "it is error for the judge in instructing the jury to assume the existence of material facts which there is no evidence tending to prove." And illustrations of the application of this rule may be found in the following cases: St. L., etc., R. Co. vs Woodward, 70 Ark. 441, 69 S. W. 55, and cases cited; Note in Sharp vs State, 14 Am. St. Rep. 44; Andreas vs Ketcham, 77 Ill. 377; Chase vs Horton, 143 Mass. 118, 9 N. E. 31. But when the plaintiff says that Cloud was to keep and use possession of the wagon until we "consummate an agreement," and then for over a year he keeps possession and uses the same as his own, does it not justify the court, in submitting the case to the jury, to say: "However, if a trade was pending between plaintiff and George Cloud, by the terms of which Cloud was to receive from plaintiff a wagon when he should give her a lease upon his land, and the plaintiff allowed him to take the wagon in controversy, and use it in such a way as that third parties were led to believe that it was Cloud's property, and, while it was being so used by Cloud, the defendant took a mortgage upon it to secure the payment of a debt owing by Cloud to defendant, knowing nothing of the rights of Davis, plaintiff would be estopped from asserting her title to the

wagon as against defendant, and defendant might hold it as against her under its mortgage."

Did not the appellant put it in the power of Cloud, when she gave him possession of the wagon to keep until they "consummated an agreement," to misrepresent his possession and ownership, so "that third parties were led to believe that it was Cloud's property?" In Ewart on Estoppel, pp. 18, 19, it is said: "The second alternative of the condition confronts us with problems altogether peculiar to the law of estoppel. It will be observed that it implies, notwithstanding what has already been said, that a man may under certain circumstances be estopped, not merely by his own misrepresentations, but by the misrepresentations of another person. It implies further, as we shall see, that he may be estopped by such a misrepresentation, if he has assisted it, although he has been perfectly innocent of any intention to do so, and although unaware of the misrepresentation until after the mischief has been accomplished. This class of cases the writer ventures to denominate 'Assisted Misrepresentation,' for the estoppel arises from the assistance rendered by the estoppel denier to the misrepresentation." On page 20 it is said: "A perusal of the cases leaves upon the mind this impression: That one man may be estopped by a misrepresenation made by another, when the former, in breach of some duty to the deceived person, has supplied the defrauder with that which was necessary to make the representation credible." And on page 24 it is said: "Ostensible Ownership. There are very many cases in which estoppel is due to assisted misrepresentation by ostensible ownership. That is to say, the true owner of property may be estopped from asserting his title by enabling some other person to successfully represent himself as the owner, and thus to deceive an innocent purchaser." We are clearly of the opinion that the appellant by her acts placed it in the power of

Cloud to mortgage this property to the appellee, and by her conduct' and action enabling Cloud to treat the property as his own, and to thus deceive the appellee to its damage, and that by reason thereof appellant is in law estopped from recovering said wagon or its value.

The judgment below is therefore affirmed.

Clayton and Gill, JJ., concur.