## CHICAGO, R. I. & P. RY. CO. v. POINTS.

### No. 4120. Opinion Filed May 4, 1915.

### (148 Pac. 720.)

**WITNESSES—Impeachment—Prior Conflicting Statements.** Where, in an action for damages in which the testimony is conflicting, plaintiff, soon after the injury complained of, has made a written statement relative to the occurrences, which is inconsistent and in direct conflict with material parts of her testimony at the trial, **held**, that the proper preliminary questions have been asked, such statement is competent evidence, and its rejection constituted prejudicial error.

(Syllabus by Bleakmore, C.)

*Error from District Court, Hughes County;*

*John Caruthers, Judge.*

Action by Mrs. Willie E. Points against the Chicago, Rock

ʳ ·land & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*C. O. Blake, H. B. Low, R. J. Roberts,* and *W. H. Moore,* for plaintiff in error.

*J. Ross Bailey,* for defendant in error.

ᵒᴸEAKMORE, C. This is an action commenced in the district court of Hughes county by the defendant in error against the plaintiff in error, to recover damages for an alleged breach of contract arising by reason of being carried beyond a station to which she had purchased a ticket. The parties will be referred to as they appeared in the court below. The case was tried to a jury on December 12th, 1911, resulting in judgment for plaintiff.

Plaintiff alleged that on the 24th day of May, 1911, she purchased from defendant a ticket, by the terms of which it agreed to transport her from Holdenville to Fanshawe, Okla., and, under directions of defendant, she boarded its train scheduled to stop at Fanshawe; that said train did not stop, and that, by reason of the negligence of defendant, she was carried beyond Fanshawe some 20 miles to the station of Wister, and was there forced to leave the train, without means of returning to her destination; that the failure of defendant to stop its train and permit her to alight at the proper station caused her irreparable injury. It is then further alleged:

"That, by reason of the defendant's agents', employees', servants', and helpers' negligence and carelessness in failing to stop said train at Fanshawe as aforesaid, this plaintiff was put down off said train of the defendant at Wister station, about 20 miles from this plaintiff's destination, and in a place unknown to plaintiff. Plaintiff alleges: That she knew no person in the town of Wister and had no earthly means of support or any means with which she could get to her destination, and was among strangers. That by reason of being so negligently and carelessly put down at Wister, as aforesaid, this plaintiff suffered great mental and bodily pain, and suffered great humiliation and disgrace by reason of being left in a place foreign to plaintiff's destination, among strangers, without any means of getting to

her said destination. Plaintiff alleges: That, in order to reach her destination, it was necessary for her to walk three-quarters of a mile, in extremely warm weather, and carry her baggage, as a result of which this plaintiff became and was afflicted with overheat, and was made sick from the exposure to which she was subjected by reason of being put down by the defendant at a place other than her destination. That said sickness consisted of being overheated, and the suffering from this plaintiff's bowels, head, back, and generative organs since said exposure, and as a result thereof, has been almost more than she can bear, rendering her life almost unbearable. Plaintiff further alleges that she suffered a severe shock to her nervous system, and, by reason of the injuries and sickness above mentioned, she has been under the care and attention of two physicians since the 24th day of May, 1911, but, on account of the old age of this plaintiff and the gravity of the injuries sustained aforesaid, it is impossible for this plaintiff to recover from the effects thereof."

Defendant answered by way of general denial, except as to its corporate existence.

It is conceded that plaintiff purchased a ticket, and that the train which she boarded was scheduled to stop at Fanshawe to permit passengers to alight.

Plaintiff's testimony was to the effect that she had started on a visit to her daughter, who lived some two miles from Fanshawe; that, before she reached said station, the conductor informed her that the train did not stop at that point, and she was carried beyond and compelled to pay the fare to Wister, a point 10 or 12 miles further east, which took all her money; that she was forced to leave the train at Wister, and was left there destitute among strangers; that at the suggestion of some one she got on defendant's motor car to return to Fanshawe, but that when she arrived at Victor, a station four miles west of Wister and some seven miles from Fanshawe, she was ejected from said car by defendant; that Victor was merely a railway station, the nearest dwelling being more than half a mile distant; that the weather was extremely warm, and she had with her baggage weighing from .75 to 80 pounds, which she was compelled to carry from

Victor to said house; that in doing so she became overheated, from which certain permanent physical injuries resulted of which she complains.

Defendant offered testimony of its employees tending to show that plaintiff, before the train upon which she left Holdenville arrived at Fanshawe, informed the conductor or auditor that she desired to get off at Victor, and was told by him that such train did not stop there, but that she could go on to Wister, and almost immediately return on defendant's motor car, reaching Victor about 20 minutes later than she would, did such train stop there; that plaintiff elected to go on to Wister; that she got off at that point and purchased a ticket back to Victor, and was carried there on the motor car.

The testimony is voluminous and took wide range.

For the purpose of impeachment defendant offered in evidence a written statement made by plaintiff in August, 1911, which is inconsistent and in direct conflict with material parts of her testimony. This statement was written in the office of plaintiff's attorney, and signed by him as a witness, and was also witnessed by the son of plaintiff and the claim agent of defendant who prepared the same. With reference to this statement, plaintiff testified that she could not read or write, and was therefore unable to identify it as the statement made by her. Her attorney testified to signing and to having read a portion of it. The claim agent testified that he wrote it, and that it contained a true statement of the facts, as then related to him by plaintiff. The name of plaintiff was signed thereto by her son. The court rejected this evidence, to which exception was saved, and this action of the court is assigned as error and urged here. Proper preliminary questions were asked. The fact of making the statement is not controverted, and it is not claimed that the writing contained any matter not actually stated by plaintiff. It was a voluntary statement, made soon after the occurrences of which it speaks, in the office of her attorney, who was there at least

a portion of the time, and in the presence of her son, who signed her name thereto and also as a witness, and its accuracy is vouched for by the undisputed testimony of the claim agent. This written statement was competent (Wigmore on Evidence, sec. 1017 *et seq.*) and the best evidence of its contents. *Kuhn v. Poole,* 27 Okla. 534, 112 Pac. 962. We are of opinion that defendant was entitled to have this evidence considered by the jury, and that its rejection constituted prejudicial error.

Again, defendant assigns as error that "the court erred in instructing the jury orally after being requested by defendant for written instruction."

In compliance with the statutes (section 5002, R. L. 1910; section 5794, Comp. L. 1909), upon request of defendant the court gave written instructions to the jury, but thereafter, when the jury reported that they had not agreed upon a verdict, gave further oral instructions, apparently admonishing them as to their duties in arriving at a verdict. A portion of such oral instructions was given at night, in the absence of defendant's attorneys. Such instructions were evidently not reported in shorthand by the stenographer, and the exact language used by the court therein does not appear in the record; but the fact of the occurrence itself appears in the case-made by affidavits of attorneys for both parties attached to the motion for new trial, their recollection being at variance as to what such instructions in fact were. To this exception was reserved.

While this action of the court may or may not have been prejudicial to the rights of defendant, it was the duty of the trial court to obey the directions of the statute and to reduce the whole of its instructions to writing, in order that there might be no doubt as to the exact language used. The parties are entitled to the benefit of the statute, for the reason, among others, that the jury may not be forced to depend altogether upon their recollection as to what the court has in fact instructed them. Upon appeal this court cannot be compelled to resort to the divergent recollection of the opposing counsel or to the memory

of the trial judge as to what oral instructions given in disobedience of the statute contained.

There are other assignments of error presented; but, as the case must be reversed for the error indicated, it is unnecessary to consider them.

The judgment of the trial court should be reversed, and the case remanded.

By the Court: It is so ordered.