## KANIMAYA v. CHOCTAW LBR. CO. et al.

No. 19350.   Opinion Filed Sept. 9, 1930.

Rehearing Denied Jan. 12, 1931.

J. S. Arnote, for plaintiff in error.

John S. Kirkpatrick, John C. Head, and Lydick, McPherren & Jordan (per Chas. E. McPherren), for defendants in error.

FOSTER, C.  This action involves the ownership of 160 acres of land allotted to Eliza Kanimaya, nee Harrison, who was a full-blood Choctaw Indian. Eliza was the daughter of Insey Thomas, who was married to Ziad Harrison.  It is the contention of defendants that Eliza was the legitimate daughter of Insey Thomas and Ziad Harrison. It is the contention of plaintiff that Eliza was born prior to the marriage of Ziad Harrison and Insey Thomas, and was the illegitimate daughter of Insey Thomas and one Dickson McCoy.   Eliza died in 1921, leaving surviving her the plaintiff, James Kanimaya, her husband, and leaving no children, no father or mother, and no brothers or sisters, with the exception of James Harrison, a half-brother.   It is admitted that James Harrison was the son of Ziad Harrison and Marsie Harrison, they having been married after the death of Insey Thomas, Ziad Harrison's first wife.

After the death of Eliza, deeds were made by James Kanimaya, the plaintiff, for a one-half interest in the land, and by James Harrison, for a one-half interest.  This suit is brought by plaintiff for the entire allotment, on the theory that the deed of James Kanimaya was obtained by fraud for a one-half interest, and that James Harrison had no interest in the property, not being related to Eliza Harrison.  There was no testimony supporting the allegations of fraud as to the deed of plaintiff in error.  The only contention made by this appeal is whether or not James Harrison was the half-brother of Eliza Kanimaya, nee Harrison.

The trial court found in favor of the defendants, which finding supported the theory of defendants that Eliza was the legitimate child of Insey and Ziad, and therefore inherited a one-half interest in the land. This is the only question presented by this appeal.

The first assignment of error is that the court refused to admit testimony offered on behalf of plaintiff.

It appears that the notary who took the acknowledgment of the several deeds in this case was particularly familiar with the habits and character of the Choctaw Indians, and the plaintiff attempts to prove by him that he had been a long time connected with the Department, and had had wide experience in handling Indian affairs, and had observed their conduct, and that the "Choctaw Indians would sign most anything presented to them regardless of its conditions if they were to get money as the result of it."

No authorities are cited to support plaintiff's contention that it was error to refuse this tesimony. We are of the opinion that the court was correct. In the first place the questions were asked and objections sustained thereto, and no offer was made as to what the answer of the witness would be. However, it does clearly appear that in all probability the answer of the witness would have been in favor of the plaintiff. But even admitting that the question is properly presented, we are of the opinion that the testimony was inadmissible. Individual transactions cannot be overcome by an indictment of a whole tribe or race of people. To allow an individual transaction to be set aside because of some peculiar moral deficiency of a whole class of people would, to our minds, be a very dangerous rule. 22 C. J. p. 174.

The second assignment of error is based upon exhibits 2A, 8 and 9, which plaintiff in error alleges were improperly admitted in evidence. Exhibit 2A is a proof of heirship signed by Marsie Harrison, in which it is stated that Eliza Harrison is the daughter or child of Ziad Harrison. Exhibits 8 and 9 are applications for the approval of deeds made in 1911 by Marsie Harrison and Eliza Harrison, in which it is stated that Eliza is the daughter of Ziad Harrison. Plaintiff contends that these exhibits are incompetent, (1) because exhibit 2A was secured by the Choctaw Lumber Company for the purpose of protecting its title; (2) that Marsie Harrison does not show herself sufficiently well acquainted with the family of Eliza to make these affidavits; and (3) that she was present at the trial.

In support of these propositions plaintiff first relies upon the cases of Lauderdale v. O'Neill, 74 Okla. 119, 177 Pac. 113, and O'Neill v. Lauderdale, 80 Okla. 170, 195 Pac. 121. The question in these cases was whether or not Eliza Lauderdale and Elsie Billy were half-sisters. The first case resulted in a reversal because of insufficient evidence. In that case a deed executed by Elsie Billy, a full-blood Indian, containing a recital that she, Elsie Billy, was the sole and only heir of Ella Webster, was introduced in evidence. The court held this incompetent to establish heirship, relying upon the case of Johnston v. Alexander, 66 Okla. 128, 167 Pac. 989. In that case it was held that evidence of a contradictory nature was not admissible to impeach a witness until a foundation was laid, which must be done by asking questions of the witness and fixing the time and place where the contradictory statements were made.

In the case of O'Neill v. Lauderdale, supra, it was held that an affidavit filed by Elsie Billy made during her lifetime and when she was selling her land, wherein she recited that she was the only heir of Ella Webster, was inadmissible. This was placed upon the grounds that it was a self-serving declaration made by Elsie Billy during her lifetime and in her interest.

We do not see how these cases could apply to the case at bar. This declaration by Marsie Harrison could certainly not be set up as a self-serving declaration.

We think these exhibits were admissible to impeach Marsie Harrison. She was asked upon the witness stand if she did not make the statement to the notary public that Eliza Harrison was the daughter of Ziad Harrison. A notary public was introduced and swore that she signed the statements. We think this was a sufficient foundation for the introduction of the exhibits for the purpose of impeachment. Marsie had sworn in her oral testimony that Eliza was not the daughter of Ziad.

Where a witness has testified to facts different to those which she has previously affirmed in an ex parte affidavit, such affidavit is admissible to contradict the witness, where a proper foundation is laid for presenting said affidavits. Leavitt v. Deichmann, 30 Okla. 423, 120 Pac. 983; C., R. I. & P. Ry. Co. v. Points, 46 Okla. 234, 148 Pac. 720; Kuhn v. Poole, 27 Okla. 534, 112 Pac. 962; Davis v. First Nat. Bank of Wewoka (I. T.) 89 S. W. 1015. Defendants contend, however, that the trial court held this evidence inadmissible as impeachment. There are some statements in the record to support this contention. It is not clear, however, on just what theory the trial court admitted the exhibits. If they are competent for any purpose, we do not think it was reversible error to admit them.

Plaintiff next contends that the court erred in admitting defendants' exhibits 4, 5. and 6. These were applications by Ziad Harrison for the allotment of lands for Eliza Harrison, consisting of testimony given by Ziad Harrison before the Commissioner of

the Five Civilized Tribes in which he purported to represent Eliza Harrison as her father.

Plaintiff contends that these were, ex parte declarations of Ziad Harrison and were self-serving declarations made during his lifetime. To support this contention, plaintiff cites O'Neill v. Lauderdale, supra. As above stated, this case holds, in substance, that an affidavit of Elsie Billy made during her lifetime, when she was selling her land, in which she recited that she was the only heir of Ella Webster, was incompetent, and of no force, because it was self-serving and made in her interest. We do not think this case applied to the case at bar. Ziad Harrison was not making an application for himself, nor in his own interest, as the term is there used, but was making it for another and represented himself as her father.

The case of McDade's Estate, 95 Okla. 120, 218 Pac. 532, we think, is more nearly in point. In that case a certified copy of the testimony of Emily Tyner, taken before the Commissioner of the Five Civilized Tribes upon her application for enrollment, was held to be properly admitted. She testified as to the name of her husband and the fact that he was dead. The testimony of Mollie McDade, taken before the Commissioner, in which she testified as to the names of her father and mother, was also admitted. The court, in passing upon the objection to this testimony, held that it was competent to prove pedigree, on the theory that it was declarations of fact about birth, marriage, and death, made by a person since deceased, who from all the circumstances was likely to know the facts about which she testified and was related by blood or affinity to some branch of the family. Under the holdings in this case, we think the declarations made by Ziad Harrison, upon the application of Eliza Harrison for her proportionate part of the lands, was admissible.

Plaintiff further contends that the testimony only shows that Ziad Harrison was representing Eliza Harrison as her father, and that, since he was then the husband of her mother and in reality her step-father, the affidavit has no force and effect. This contention, we think, goes more to the probative force of the exhibits. We are inclined to believe that they do have very little force and effect, but we think they are admissible for whatever they are worth. They would not be sufficient standing alone, in our opinion, to prove pedigree; but as a circumstance they are admissible.

Plaintiff also objects to the introduction of exhibit 10, which was the enrollment record of Ziad Harrison's family. Under this contention it is argued that the census cards and enrollment records are admissible only for the purpose of identification, and were never intended that the descriptive matter should have any force and effect as evidence. Plaintiff and defendants both rely upon the following cases: Paige v. Atkins, 86 Okla. 290, 208 Pac. 807; Mowdy v. Leeper, 122 Okla. 16, 250 Pac. 432; Halsell v. Beartail, 107 Okla. 103, 227 Pac. 392; Malone v. Alderdice, 212 Fed. 668.

From an examination of these cases, we think, as particularly pointed out in the case of Mowdy v. Leeper, supra, that the rolls of citizens of the Five Civilized Tribes are admissible in evidence. While the descriptive part of such rolls does not have the force and effect of the judicial determination of the matters shown therein, they are prima facie evidence of the matters, such as parentage, etc.

From a careful consideration of the cases relied upon, we believe the census card, or enrollment record, which was admitted in the case at bar, was properly admitted, and is at least some evidence to show that, at the time the card was made—which was according to the other testimony in the case about the time of the birth of Eliza Harrison—Ziad Harrison and Insey Harrison were man and wife, and Eliza Harrison was their daughter.

It is next contended that exhibit No. 7 was erroneously admitted in evidence. This exhibit is a page of a book introduced as an enumeration of the Choctaw Indians of Eagle county, in the year 1893. It was prepared by three Indians, namely, Jeff Gardner, Nelson Tonihka, and Isham Going, who appeared to have signed the same. Jeff Gardner was at one time Principal Chief of the Choctaws, and at least two witnesses testify that these three men took the census of Eagle county about that time, and identified the signature of Jeff Gardner, although he died in 1906. The record does not disclose where the book has been kept, although plaintiff's brief alleges that it was found in an old case in Choctaw county. It bears date of June 14, 1893, and lists Ziad Harrison as age 25, his wife Insey age 19, and Lobin Harrison, son, age one year. It was admitted by the trial court on the theory that it was an ancient document, and its purpose was to show that Ziad Harrison and Insey Harrison were man and wife at that time, and from the testimony Eliza must have been born in 1893, as she does not appear upon that roll.

Plaintiff first contends that this exhibit is inadmissible because of a discrepancy in

the age of Ziad Harrison, who appears upon the 1899 rolls as age 34. The exhibit introduced does not show the exact date that the enumeration was made, and we do not believe this discrepancy would be sufficient to warrant an exclusion of the exhibit.

It is next contended that there is no showing that the purported enumeration was found in the proper custody, and that according to the Act. Cong. May 27, 1908, all such papers must be delivered to the Secretary of the Interior, and there is no showing that this enumeration was so delivered.

In support of this contention, the plaintiff argues that, in order for an ancient document to be admissible in evidence, three things must be shown: (1) That it is at least of the age of 30 years; (2) it must be found in the proper custody; and (3) it must be unblemished from alterations and otherwise free from suspicion.

The chief argument is based upon the proposition that this enumeration was not found in its proper custody, and that, as a matter of fact, there is no showing as to who had possession of the instrument from the time it was made until it was introduced at the trial.

The rule governing the introduction of ancient documents has been before all courts many times, and is not definitely established. The weight of authority, however, seems to be that, in order to admit a paper as an ancient instrument, it must come from the proper custody. When an ancient instrument is shown to have been of sufficient age and found in the proper custody, and unblemished from alterations and otherwise free from suspicion, its genuineness is presumed, and it is not necessary to prove its execution. Proper custody has been held by most authorities as one of the essential prerequisites to the admission of an ancient document.

However, by some authorities, and from the general theory upon which ancient documents are admitted, the purpose of showing its custody is to prove its genuineness. It appears that it is not that any particular place of deposit can have any more virtue than another to make the instrument true which would otherwise be false, but the fact that it comes from its natural place adds strength to its validity and removes the presumption of fraud and strengthens the belief that it is genuine. Gibson v. Poor (N. H.) 53 Am. Dec. 216, and 22 C. J., sec. 1180, p. 954.

The purpose of showing custody of an instrument is to afford to the court reasonable assurance of authenticity, and whether a document comes from the proper custody, is a question for the court and not for the jury. C. J. supra.

There is no showing that the document sought to be introduced is an official record. The only showing is that it was an enumeration taken by three Indians, one of whom was Principal Chief of the Choctaws in the year 1893, and signed by them. As to whether or not these are the official rolls of the Choctaw Indians or a record from which the official rolls for the year 1893 were made, is not disclosed from this record. However, from all the testimony, it does appear that whether authorized by any official of the United States government, or by the officials of the Indian Tribe, three Indians for some reason made an enumeration and signed their names to it, and the instrument introduced is shown to have been signed by the identical persons who took this enumeration.

We think from all the circumstances in this case that this instrument was admissible. As to how much probative effect it had, we do not say, nor do we think it necessary to decide. But we think that, under the circumstances and the proof presented, there was no error of the trial court in admitting it, as it appears to us to have been taken as contended for by the defendants, regardless of whether it is an official document.

It is also contended that there is no showing that this paper is more than 30 years old. This rule as to the age of ancient documents is also a flexible one. We think, however, by the proof here presented this instrument was at least 20 years of age. But under a recent decision of this court, this 30-year rule is not applicable under all circumstances. This question was fully discussed in the case of Neustadt v. Coline Oil Co., 141 Okla. 113, 284 Pac. 52.

Under the facts in this case, we do not think the court erred in admitting exhibit No. 7.

The last assignment of error is that the judgment of the court is against the clear weight of the evidence. This presents a very serious question. In an equity case this court will weigh the evidence, and unless the judgment of the trial court is against the clear weight thereof, it will not reverse the same.

From an examination of the testimony, it will be found that the plaintiff produced certain witnesses who testified positively to the fact that Eliza was an illegitimate child of Insey. Sally Magee, an aged Indian

woman, grandmother of Eliza and mother of Insey, testified that Eliza was born to Insey while she was living at her home, and before her marriage; that for a year prior to Eliza's birth, one Dickson McCoy had lived at her home and that just prior to the birth of Eliza he (Dickson McCoy) had left their home and gone to the home of his mother because of the talk in the community and among the members of the family that he was the father of Eliza; that Insey during her lifetime had told Sally that Dickson McCoy was the father of Eliza. Milan Totubbi, sister of Insey, testified that Dickson McCoy stayed at their home for about a year just prior to Eliza's birth, and that Dickson and Insey occasionally slept in the same bed. Sarah Harris, an aged neighbor, also testified that Insey was living at her mother's home unmarried when Eliza was born. Marsie Harrison, whose name is now Lewis, the second wife of Ziad Harrison, testified that Ziad told her that Dickson McCoy was the father of Eliza. The mother and sister of Insey also testified that, after the birth of Eliza, Insey was very sick for almost a year, and that the mother of Dickson McCoy took the child and Eliza remained with her for sometime, and that when Insey went to get the child, she and the mother of Dickson McCoy had a fight over her, and that the sister (Milan) stole the baby and ran away with it, and that Insey has kept it ever since.

This oral testimony of the witnesses produced at the trial is somewhat positive and convincing, and there is abundant proof from stand who contradicted this testimony. The whole case of the defendants is based upon the exhibits, which have heretofore been discussed.

On the other hand, the records are very convincing, and there is abundant proof from the exhibits and records, which were presented by the defendants, to show that the parties buying this land acted in good faith. These records also show Eliza to be a legitimate child. In this state great weight is always given to the judgment of the trial court, where he has the opportunity to see the witnesses and observe their conduct, as he did in this case. There is also a presumption of legitimacy that surrounds every child, and where there is any serious doubt, the courts will always lean toward that state of facts which tends to support the contention that the child is legitimate, rather than to declare it illegitimate.

We therefore conclude from a consideration of the entire record, and owing to the fact that the circumstances about which the witnesses testified occurred about 40 years before the time of the trial, that the judgment of the trial court is not against the clear weight of the evidence.

The cause is therefore affirmed.

TEEHEE, LEACH, and EAGLETON, Commissioners, concur. REID, Commissioner, concurs in conclusion.

By the Court: It is so ordered.