## BOYKIN & LANG *v.* HOLDEN WRIGHT.

11  531
e1131050

A duly certified copy of an act under private signature, recorded in the office of conveyances, is admissible in evidence, in lieu of the original, when the latter is lost, and due diligence has been used in searching for it and publishing the loss.

Where the affidavit of the subscribing witness, upon which the act under private signature was admitted to record, stated that the affiant was present when the act was executed, and saw the parties sign the same, it was a substantial compliance with Art. 2250 C. C. It is the recording of the title in the proper office which is notice to third parties, and not the testimony upon which the instrument was admitted to record.

The fee-dockets of Clerks of Court are official records authorized by Art. 776 of the Code of Practice, and copies from them, duly certified, are admissible in evidence. The fact of their serving as account-books for the fees of the Clerk, does not lessen their authenticity as records of the proceedings had in suits.

APPEAL from the District Court of Terrebonne, *Cole, J.*

*C. A. Johnson,* for plaintiffs. *J. C. & A. Beatty,* for defendant and appellant.

MERRICK, C. J. This is a petitory action. There was the verdict of a jury and judgment of the court in favor of the plaintiffs, and defendant appealed.

Both the plaintiffs and the defendant are claimants of portions of the same original grant, which was confirmed by government to *Robert Martin,* and by him sold to *James Bowie.* They both claim through mesne conveyances from *James Bowie.* The original title of the plaintiff is the oldest, but both his location and the title itself, originally and through its various links, is contested.

In order to understand fully the merits of the objections, it is necessary to examine the situation of the land and the description of it, in the respective titles of the parties.

The upper line of the Robert Martin tract, 202 chains in length, crossed the Bayou Black (probably in order to adapt it to the large grant of land above,) in such a manner as to form an acute angle on the one side, and an obtuse angle on the other, on a line drawn with the general course of the bayou through the Robert Martin tract. In 1826, two years before *Bowie* sold to

BOYKIN
v.
WRIGHT.

*Isaac Thomas*, the original vendor of plaintiffs, he sold on the left bank of the bayou, out of the David Martin tract, to *J. D. Smith*, one thousand acres, described as follows: " to begin at a point where Bayou Duburge makes out of said Bayou Black, and running up and down with equal distances from said point of Bayou Duburge and fronting on Black, so that when the side lines are run out as far as the land of said *Bowie* extends, the [tract] shall contain one thousand acres; provided these side [lines] shall be run at the usual way of surveying those lands on said bayou."

The first act of sale from *Bowie* to *Isaac Thompson*, was made through the intervention of an agent acting under a power of attorney, and by notarial act passed before the parish Judge of Terrebonne, bearing date the 28th day of January, 1828.

The tract transferred is described as " one thousand arpents of land situated in said parish, on Bayou Black, to be taken from the upper end of the tract conceded by the Spanish government to *Miguel Satarnino*, and confirmed by the government of the United States in the name of *Robert Martin*. * * * * * * The said concession and confirmation being for fifty arpents front on each side of said Bayou Black with the ordinary depth of 40 arpents * * * * and it is further understood that the land herein conveyed to said *Thomas* is so to be laid off and set apart as to make his lower line parallel with the upper, and have equal width on each side of the bayou."

On the 30th day of January, 1828, the agent of *James Bowie*, by an act under private signature, recorded in the parish Judges' office, March 6th, 1828, after reciting the substance of the notarial act of 28th of January, 1828, and the description of the land, proceed to declare: " Now if the calls in the said conveyance to said *Thomas* should interfere with lands previously sold to *Dr. J. D. Smith*, of Concordia, it is understood and agreed, that said *Thomas'* thousand arpents shall be laid off adjoining said *Smith's* lower line, agreeably to the principles established and laid down in said *Thomas'* conveyance above referred to."

*James Bowie*, on the 17th day of February, 1829, by notarial act, not recorded in the parish where the land lies, ratified the two acts of his agent to *Isaac Thomas*.

The deed under which the defendant claims bears date April 25th, 1828, and appears to have been recorded the 29th of the same month. This also was passed by an agent of *James Bowie*. The description of the land conveyed is, " a certain tract or parcel of land measuring three hundred superficial arpents, situated in the parish of Terrebonne, on the north side of Bayou Black, at about five miles from the Bayou Terrebonne, bounded above by the lands of *John Minor* and *James Dinsmore*, below by other lands of said *James Bowie*, and back by a line running north sixty-four degrees and sixteen minutes east, and separating the same from vacant or Congress land."

Taking it for granted for the present, that the acts from *Bowie* to *Thomas*, were formal, we will first consider the question as to the location of the tracts of land under their conveyances. The plaintiff contends that there was not one thousand arpents in that part of the Robert Martin tract, lying above the tract conveyed to *J. D. Smith* (which last tract takes precedence of both plaintiff and defendant). To this, defendant replies that there is no sufficient proof to show this fact, taking the Smith tract as claimed by the present occupants; but that the Smith tract, instead of being laid out at right angles with

the Bayou Black, should have been laid out, so that the side lines would be parallel with the upper line of the Robert Martin tract; that this location would have diminished the Smith tract nearly one-half of its front and left the 1,000 arpents for the plaintiff's vendors above.

There is testimony in the record which shows that the J. D. Smith tract of land has been laid out as was usual and customary in that section of the State, that is; that it was laid out as nearly as practicable at right angles with the bayou. It is shown also by the same witness, who himself had been a surveyor, that there was not one thousand arpents in that part of the Robert Martin tract, lying above the Smith tract, to give the plaintiffs their quantity. But this witness had not measured the land, and only spoke from observation by frequently passing and the maps before him. We cannot say that the jury erred in giving full weight to the testimony of the witness in both of these particulars. The survey at right angles with the bayou would be much more natural and better calculated to give value to the lands, than the one contended for by the defendant, which would divide the tract into inconvenient portions. For example, were plaintiffs land laid off, as the defendant contends it should have been, it would be eighty or one hundred arpents in length and ten or twelve in width. The Smith tract, instead of being in a regular shape, would be narrow, and terminate in an acute angle on the bayou, at its lower corner, and in a like angle at the upper corner on the back line. In regard to the quantity above the Smith tract, an inspection of the surveys would tend to confirm the statement of the witness.

We see, therefore, no error in the conclusions of the jury, in regard to the place where plaintiffs' land is found, nor in the manner in which it was to be laid off. What we have here said, applies with equal force as to the manner in which defendant insists that plaintiffs' tract of land ought to be laid out, if his pretensions to have it set off to him below the Smith tract be admitted.

We will now consider the objections raised to plaintiffs' title.

I. A copy of the act under private signature, certified by the recorder, was offered in evidence. It is objected, that there was no proper evidence of the loss of the original adduced. We think the search made and the publication of the loss in the newspapers, showed sufficient diligence to discover the original, and that after the lapse of so many years, and the unavailing search made, secondary evidence was properly received.

II. The act under private signature was proven by one of the subscribing witnesses only, before the parish Judge. The witness testified that " he was present when the said deed was executed, and saw the parties sign the same." It is objected, that this affidavit does not authenticate the instrument, so as to make proof of it against the defendant, and that it did not authorize the parish Judge to record it, and therefore it can have no effect against third parties.

It is the recording of the titles in the proper office which is notice to third parties, and not the testimony upon which the parish Judge or Recorder may have admitted the instrument to record. *Hampton* v. *Morgan*, 9 Ann. 547.

In the instrument before us, we think the parish Judge had substantially complied with Art. 2250, C. C., when he admitted this instrument to registry.

A loss of the original act having been shown, we think that after a lapse of more than twenty-seven years from the execution of the act under private signature and its registry, accompanied by constructive possession for the whole

period, and actual possession for twenty years, of the large portion of the tract of land conveyed, and a former possession of a part of the tract in controversy, that the instrument was admissible in evidence, and the Judge did not err in receiving it.

IV. It is objected, that the recognative act was not registered, and should have been excluded from the jury. As sufficient notice was given to all the world, by the registry of the original act of sale, and the act *sous seing privé*, no registry of the act of ratification was required.

V. It is further objected, that "the power of attorney from *James Bowie* to *S. Bowie*, authorized him to sell, but did not authorize him to exchange lands or buy back a tract of land already sold, and give in exchange for it another tract of land."

It will be observed, that the power of attorney to *S. Bowie*, was not simply to sell one thousand arpents to *Isaac Thomas*, but to sell to any person any part or all of his, *James Bowie's*, lands in the parish of Terrebonne. Now, as the authority under the power of attorney did not terminate with the notarial act to *Thomas*, for he was to sell all the lands, and as it is apparent that this act did not convey to *Thomas* the one thousand arpents intended, the agent and *Thomas* were authorized to remove the obstacle in the way of a perfect sale and to correct the description of the land, so as to carry out their original intentions. Until this was done, he had not made a complete sale, and his power over the object had not terminated.

VI. The next objection which we notice is raised by a bill of exception to the introduction of testimony.

It appears that *Thomas* sold to *W. Bogart*. *Bogart* went into forced insolvency in the Commercial Court of New Orleans. Plaintiff alleges that *Joseph Fowler*, through whom he claims, bought at the syndic's sale. In support of this averment, he proves that the original insolvent proceedings are lost, with the exception of the schedules and the entries on the minutes of the court, the most diligent search having been made to find the same.

The plaintiff offered in evidence these portions of the record, and also certified copies of other portions which had been used as evidence in other courts, together with a certified copy of the fee docket, showing that such papers had been filed and certain orders made in the insolvent proceedings.

The defendant objected to the introduction of parts of the record, and to the introduction of a copy from the Clerk's docket, wherein he had entered his fees, because it was not a book which was recognized by law.

The plaintiff had established a basis by his proof for the introduction of secondary evidence. Of secondary evidence, he was obliged to produce the best in his power. The portions of the record extant, were the best evidence of the kind, and their non-production would probably have been fatal to plaintiff's case. The copy from the Clerk's fee book was also admissible. The Code of Practice, Art. 776, requires him to keep a book, in which he shall set down in order the titles of all causes depending between the court, mentioning the date of the filing of the petitions and answers, and the names of counsel employed by the parties. The fact, that this book is also commonly used as a fee docket, cannot lessen its authenticity.

An order found on the minutes, recognizing *Fowler* as the purchaser, together with the *proces verbal* of the auctioneer, referring to an order of sale, and an act of sale from the syndic, with the testimony of the witnesses and other

BOYKIN
v.
WRIGHT.

portions of the record produced, furnished to the jury sufficient data from which to infer, that an order of sale had been regularly made, particularly as the party now questioning the proceedings, does not pretend to claim under *Bogart*.

In conclusion, we remark that the whole matter has been submitted to a jury, and we discover no such error in the proceedings of the lower court as to require us to disturb the judgment there rendered.

Judgment affirmed.