### C. Wille et al. v. Eugenie Ellis et al.

Decided January 17, 1900.

1. **Limitation—Possession Discontinued—Coverture.**

Title by limitation is not established where the possession under which it was claimed was interrupted, and was only renewed when those who were then the adverse claimants were and thereafter remained under coverture.

2. **Trespass to Try Title—Improvements—Purchaser Pendente Lite—Notice.**

A purchaser of land from one against whom suit for its recovery was then pending, though ignorant of that fact, took and improved it subject to the result of the suit, and, losing the land, could not recover for his improvements.

3. **Deed by Attorney—Ancient Instrument—Power Presumed.**

A deed over twenty years old, made by an attorney for the grantor whose power to execute it was not produced, was properly received in evidence on proof that the grantor had recognized its validity and the presumption of power in support of an ancient instrument.

4. **Deed by Attorney—No Power—Admissible to Fix Limits of Possession.**

A bond for title ineffective for want of proof of the power of the attorney executing it, may properly be received to show the boundaries claimed by the grantee in possession under it, in support of his defense under the ten years statute of limitation.

5. **Limitation—Ten Years Possession—Boundary—Memorandum of Title.**

Under the limitation law in force in 1874 (Act of 1841; Paschal's Digest, articles 4621, 4624), a bond for title constituted such memorandum of title as enabled one in possession thereunder for ten years to defend on the ground of limitation, to the extent of the boundaries in such instrument; and such bond, recorded, was sufficient also under the law in force since 1879.

6. **Limitation—Lis Pendens.**

One in possession under a bond for title before litigation began will not be shut out from his defense of limitation by accepting a deed, after suit begun against the grantors, though the suit terminated against them.

**7. Limitation—Five Years—Deed Registered—Coverture.**

To establish limitation under the five years statute, claimant's deed must be recorded and limitation thus begin to run before the existence of a disability which would prevent the bar. Where a married woman acquired land in adverse possession, those adversaries whose deeds were previously recorded took the benefit of the statute; but those who registered their deeds after the title was in the married woman did not.

**8. Limitation of Five Years.**

Five years possession, etc., under a deed duly registered is sufficient to support limitation, though the deed be from a stranger to the title.

**9. Limitation of Three Years—Judgment—Lis Pendens.**

A recovery by a plaintiff, who claimed title under an alleged partition with part owners under whom defendants claimed, established, as against a purchaser pendente lite from such defendants, the fact of such partition, and a break in the chain of title of such purchaser which precluded him from availing himself of the three years statute of limitation.

ERROR from McLennan. Tried below before Hon. MARSHALL SURRATT.

*D. A. Kelley*, for plaintiffs in error.

*Harris & Saunders* and *Clark & Bolinger*, for defendants in error.

FISHER, CHIEF JUSTICE.—This is an action of trespass to try title, brought in the District Court of McLennan County on the 11th day of April, 1898, by Eugenie Ellis, joined by her husband P. L. Ellis, and Tassie Ellis, joined by her husband Q. A. Ellis, against appellants, F. M. Le Bow, Christian Wille, M. J. Jones, and H. L. Sammann, for the recovery of a strip of land 227 varas wide by 2843 varas long, out of the Jesse Russell league and labor survey, in McLennan County. Defendant Le Bow dropped out of the case, having sold his interest to one of his codefendants.

Defendants Wille, Jones, and Sammann pleaded general denial, not guilty, and three, five, and ten years statutes of limitation, and improvements in good faith. Each defendant claimed a certain portion of the land in controversy. Defendant Wille claimed in his answer thirty-one acres, which began on the eastern line and ran south 60 west 781 varas; defendant Jones claimed twenty-seven acres of land joining Wille on the west, extending south 60 west, 678 varas; defendant Sammann claimed fifty-seven acres joining Jones on the west, extending south 60 west 1428 varas.

In replication to the pleas of limitation, Mrs. Eugenie and Tassie Ellis pleaded coverture, and claimed that they owned the land as their separate property, by deed of gift from James P. Ellis on the 22d of June, 1882.

Trial was before the court without a jury, and judgment in favor of the plaintiffs for the land and in favor of the defendants for the value of the improvements.

The facts showing the title of the respective parties are as follows:

Plaintiff introduced in evidence (1) patent for the Jesse Russell survey, giving the field notes, which include the land in controversy. (2) General warranty deed from Jane Hill (who was formerly Jane Russell, the wife of Jesse Russell) and her husband to J. K. Williams for all their interest in and to one-half the Jesse Russell headright survey for one league and labor of land, being the community right of Jane Hill, which instrument was executed on the 4th of February, 1855. (3) A general warranty deed of date June 30, 1856, from J. K. Williams to Jas. P. Ellis, acknowledged and recorded on the 7th of July, 1856, for 1000 acres of the Jesse Russell survey. (4) Jas. P. Ellis sued Green B. Stone and others on the 27th of March, 1875. The original petition is not in the record, but according to the amended petition, the suit, in effect, was an action to remove cloud and recover 1000 acres. It appears from the averments of the amended petition that Ellis claimed the 1000 acres by virtue of the deed from Williams to Ellis; and it is averred that Williams acquired his right under a contract with Mrs. Jane Hill (formerly Mrs. Jane Russell) and her husband, by which Williams located the Russell league, and that the 1000 acres was conveyed to Williams by said contract, and that the same was partitioned off to him under an agreement made with Mrs. Jane Hill and her husband, which the petition alleges was binding upon the defendants in the suit of Ellis v. Green B. Stone et al. The defendants in the suit of Ellis v. Stone et al. were, it seems, claiming as the heirs of Jesse Russell. On the 12th day of November, 1895, a decree was rendered in the case of James P. Ellis v. Green B. Stone and others, in favor of the plaintiffs in this suit, for the recovery of the 1000 acres of the Jesse Russell survey, which the evidence of witness Goddard shows embraces the land in controversy.

On June 22, 1882, Jas. P. Ellis conveyed the 1000 acres to the appellee Eugenie Ellis and Tassie Ellis, they both at that time being married women, and have since been.

Appellants in their brief, on page 18, admit that the defendants in the case of Ellis v. Stone et al. were the heirs of Jesse Russell.

We also find that none of the appellants in this action nor one L. D. Spight, under whom they claim, were parties to the suit of Ellis v. Stone.

We further find that by the conveyance from James P. Ellis to Eugenie and Tassie Ellis it was intended that the 1000 acres should be their separate property. Jas. P. Ellis was their father, and he has, since the date of that instrument, died.

It appears from the evidence that the appellees first took possession of the 1000 acres in 1887.

The following are the facts shown by appellants' evidence. Some of the Stones who were parties to the suit of Ellis v. Stone et al., on the 10th day of January, 1876, executed to L. D. Spight a deed for 745 acres, which was recorded January 20, 1876. It is claimed that this instrument includes the land in controversy. November 7, 1876, Spight, by deed, sold 400 acres to J. H. Norton. This deed was recorded April

14, 1877. On the 16th of March, 1893, Norton, by deed, which was recorded April 11, 1894, sold 400 acres to appellant Christian Wille. On the 24th of July, 1880, Spight by deed, which was recorded November 6, 1882, sold 131 acres to appellant Jones. On July 11, 1876, Spight and one Renick, with several of the Stones, who were parties to the suit of Ellis v. Stone, by agreement, recorded July 12, 1876, sold to S. F. Stone, who it seems was a party to that suit, 231 acres. In this agreement it is stated that it is a partition deed among tenants in common, and that each agrees to defend the title.

July 28, 1881, S. F. Stone, by deed, conveyed the 231 acres to Gouldy and Payne, described as beginning at the J. G. Allen N. W. corner. On August 28, 1884, S. F. Stone, by deed, reciting a mistake in the above deed and correcting same, sold to John Gouldy. July 1, 1881, Gouldy and Payne, by deed recorded July 14, 1881, sold the 231 acres to Walter Gresham.

April 11, 1883, Gresham, by deed recorded April 11, 1885, conveyed the 231 acres to F. M. Le Bow. July 14, 1892, Le Bow sold to appellant H. L. Sammann the 231 acres, which deed was recorded January 5, 1894.

Norton, when he purchased from Spight, went immediately into possession and built a house and lived on the land until he sold to appellant Christian Wille, who has been continuously in possession since that time. All taxes were paid by Norton yearly on the land as they accrued, during the time that he owned it.

Appellant Jones has been living upon and cultivating his part of the land from the time he bought it from Spight. Jones took possession immediately when his deed was executed, and has since paid all taxes yearly, as they accrued.

Le Bow took possession of the 231 acres purchased by his vendors from S. F. Stone, in April, 1883, and was in possession from that time until he sold to appellant Sammann, and he paid all taxes from 1884 to 1892. Sammann paid all taxes since he bought from Le Bow.

Spight was in possession of 1000 acres of the Russell league, which the evidence strongly tends to show includes the land in controversy, under a bond for title executed by the Stones, since 1874. The bond for title, however, was not admitted in evidence by the court, but the testimony shows that Spight was in actual possession of a part of the land described in the bond for title since 1874. And the testimony shows that he remained in possession until he sold or conveyed to the several parties heretofore named.

In so far as the facts are stated, it clearly appears that no error was committed by the trial court in rendering judgment in favor of the appellees against the appellant Sammann for the recovery of his portion of the land.

If it can be admitted that Spight was in possession of this part of the land, it is clear, under the evidence, that his possession terminated January 11, 1876, when he and Renick and several of the Stones sold

the 231 acres to S. F. Stone, under whom Sammann deraigns title. From that date until the time Le Bow went into possession in April, 1883, no one was in possession of this 231 acres, so far as shown by the evidence. It appears that this 231 acres was first taken possession of by Le Bow in April, 1883; and at that time limitation would not affect the claim or the right of the appellees Mrs. Eugenie and Tassie Ellis, the real owners, because then they were under coverture. If it can be assumed that Spight had been in possession of this 231 acres prior to the time that he conveyed, it is clear, under the evidence, that he was not in possession such length of time as would give right under any of the statutes of limitation. This break in the possession was fatal to appellant Sammann's claim.

It is not pretended that Sammann or either of the other appellants deraign a superior title from the sovereignty of the soil, but the only claim of title they urge is based upon the statutes of limitation.

Appellees have a cross-assignment complaining of the judgment of the court in awarding appellants pay for their improvements; and as to appellant Sammann, we will dispose of this objection now. We think the appellees are right in their contention. Whatever right Le Bow or Sammann acquired in the land, or any of the parties with whom they connect title, is traced back to the deed from S. F. Stone, who was a party to the suit of Ellis v. Stone, which suit was undetermined and pending during the time that the several conveyances, down to and including the one to Sammann, were executed. It is true that it is shown that they had no actual knowledge of the pendency of the suit of Ellis v. Stone, and that the title to the land in question was being litigated in that action; but we think the doctrine of lis pendens denies the acquisition of any right acquired from a party to the action during the pendency of the suit, so as to relieve it from the effect of the final judgment that may be rendered in disposing of the res before the court. The action, being one in rem, a purchaser from a party to the suit is charged with notice of not only the existence of the action, but also of who the parties are, as well as of the thing in controversy. Improvements made upon the land during the pendency of the suit involving its title are made subject to the final judgment that may be rendered in the case; and under such circumstances, the party making the improvements runs the risk of losing their value.

We do not think it is the policy of the law to hold one a possessor in good faith, so as to relieve him from the effect of a judgment that may be rendered in an action pending at the time that he goes into possession and acquires his pretended title.

Under the pleas of limitation, the defendants offered in evidence a bond for title, executed by Green B. Stone and John Stone, by their attorney in fact, S. H. Renick, and S. H. Renick for himself, to L. D. Spight, dated the 27th of April, 1874, and duly recorded in that month, for 1076 acres, a part of the Jesse Russell league and labor; the field notes of which, it is claimed by appellants, include the land in contro-

versy. The court refused to admit this instrument in evidence, evidently for the reason that the authority of Renick to execute it was not shown. A power of attorney was offered in evidence, purporting to have been executed by G. B. and John L. Stone, authorizing Renick and one Frazier, or either of them, to sell and convey the land; which power of attorney was dated February 20, 1872, but the execution of which was correctly held by the court to be not properly proven up.

In connection with the bond for title was introduced the evidence of witness Cassedy, to the effect that he negotiated the transaction for the sale of the 1076 acres to Spight, as stated in the bond for title, and he testified that he put Spight in possession of the land under the bond for title, and that the grantors, Green B. and John L. Stone, knew that the sale had been made to Spight, and that he had been put in possession under the bond for title. He further states that Spight went immediately into possession at the date of the bond, built a house on the land in which he and his family lived, put a field in cultivation, and lived on the land until he sold it out to J. H. Norton, N. J. Jones, and others.

We think the court erred in not admitting this bond for title in evidence. The instrument, at the time it was offered in evidence, was over twenty years of age. That fact, in connection with the evidence of the witness Cassedy showing that the grantors therein, the Stones, recognized its validity, was sufficient to authorize the court to presume the existence of the power under which the bond was executed. Land and Cattle Co. v. Whitefort, 21 Texas Civ. App., 314. But, independent of this view, we think the bond for title was admissible as a memorandum of title, defining the boundaries of the land of the possessors, under the ten years statute of limitation. It has been held that a void deed, duly registered, is a sufficient memorandum of title under the ten years statute to entitle the possessor under such an instrument to recover to the extent of the boundaries therein defined. Wofford v. McKinna, 23 Texas, 46; Schleicher v. Gatlin, 85 Texas, 274; Lambert v. Weir, 27 Texas, 365; Charle v. Saffold, 13 Texas, 109. And, as held in Wofford v. McKinna, supra, page 44, and Cantagrel v. Von Lupin, 58 Texas, 572,—in construing the rights of the possessor under the ten years statute, where he claims to the extent of the boundaries defined in the conveyance,—the power under which the instrument is executed need not be produced.

The Act of 1841, which is in effect stated in articles 4621 and 4624, Paschal's Digest, was in force at the time Spight went into possession in 1874 under the bond for title. That act was construed in Charle v. Saffold, 13 Texas, 111. There the court, in speaking of the fourteenth section of the act, which barred the right of the true owner if entry was not made within ten years, as against an adverse possessor, says: "There are two sections of the Act of 1841, under which ten years adverse possession may claim to be protected, viz., the seventeenth, under which naked possession, without evidence of title, will give full property to 640 acres of land; or if there be actual possession of more than 640

acres, for instance, by inclosure of 1000 acres, the possessor is protected under the fourteenth section, not directly or in express terms, by vesting title, but by cutting off the remedy of the adversary claim; or in other words, by barring the right of entry; or if the possession be taken under some written muniment purporting to vest title, the possession being constructively adverse within the boundaries specified and defined by this color of title, if continued without interruption for ten years, will also be secure under the bar of the fourteenth section of the statute. The remedy of the owner of the legal title will be defeated, his right of entry, and consequently of action, being cut off."

The bond for title under which Spight held was duly registered a short time after its execution, and the evidence shows that he went into possession under it. It defined boundaries, which the appellants contend embrace the land in controversy. That instrument, in our opinion, was a sufficient memorandum of title upon which to base the defense of limitation under the ten years statute to the extent of the boundaries described in the instrument. If Spight was in actual possession of a part of the land described in the bond, his possession would extend to the boundaries set out in the instrument, just so long as he continued in actual possession of a part. Of course, after he had sold to the several defendants who claim under him, he could not be held to be in possession of that particular portion so sold after the date of the deeds executed by him. No protection could be afforded Spight under this instrument under the five years statute of limitation, because it was not a deed as is prescribed by that section of the law. Schleicher v. Gatlin, supra. The present law on the subject, which went into effect in 1879, authorizes the adverse possessor under the ten years statute to hold to the extent of the boundaries in the recorded memorandum of title under which he claims. At the time the present statute went into effect, the bond for title was recorded; and under this last statute, we think it would also serve as a memorandum of title.

In opposition to this view of the question, the appellees contend that the deed of January 10, 1876, executed by G. B. and John L. Stone to Spight for 745 acres, merged the bond for title, and that Spight's right only commenced from the date of the deed; and as it was executed during the pendency of the suit of Ellis v. Stone by G. B. and John L. Stone, who were parties to that action, the doctrine of lis pendens would apply, and no adverse claim could be asserted by Spight or those claiming under him, under that instrument.

If Spight's right to the land could only be traced back to this deed, this contention would be correct; but if the bond for title conveyed to him the land in controversy, then we think his possession under that instrument would be adverse to all the world, except his grantors, and that the defendants claiming title under him could trace their possession back to this source.

If Spight held the land under the bond for title, he nor his vendees could not be affected by the suit of Ellis v. Stone, because they were not

parties to it. Their right to the land being acquired by an instrument executed prior to the institution of that action, of course the doctrine of lis pendens would have no application. The evidence shows that Spight continued in possession until he sold to Norton, and Norton then continued in possession of the 400 acres bought from Spight by deed dated the 7th of November, 1876.

Wille after his purchase from Norton continued in possession. Defendant Jones after his purchase from Spight, July 24, 1880, continued in possession. The continuous possession of Spight and his vendees, tracing back to and connecting with the bond for title, being for a longer period than ten years, would bar the entry and defeat a recovery by the appellees; provided the bond for title conveyed the land in controversy, which the appellees contend was not the case, according to their construction of the field notes. Limitation commencing to run before Ellis sold to the appellees, their coverture would not interfere with the operation of the statute. If, as said before, the bond for title does not include the land in controversy, though the deed executed by the Stones to Spight in 1876 does include it, the defendants could not be protected under any of the pleas of limitation, because the title under which they claim was acquired during the pendency of the suit of Ellis v. Stone, and the doctrine of lis pendens would cut them off from any remedy under the several statutes of limitation; and would also bar a recovery for the value of the improvements, as has been previously stated in discussing that branch of the case that relates to the title of appellant Sammann.

If the bond for title embraces the 400 acres sold by Spight to Norton, appellant Wille, tracing his right back to that source, could hold his interest in the land under and by virtue of the statute of limitation of five years, because the instrument executed by Spight to Norton was a deed as prescribed by that statute, and the same was executed and recorded with accompanying possession before the conveyance of title to appellees, Mrs. Tassie and Eugenie Ellis. The evidence shows that Norton paid taxes for more than five years after he purchased. But that statute could not prevail in favor of appellant Jones, because his deed from Spight was not recorded until after the appellees acquired title, which was at the time of the existence of coverture. Registration of the deed must coexist with possession and payment of taxes.

It may be also said that if upon another trial it should be determined that the bond for title nor the deed from the Stones to Spight included the 400 acres sold by Norton to Spight, then appellant Wille could recover under the five years statute. The deed executed by Spight, who was not a party to the suit of Ellis v. Stone, is such an instrument upon which to base the operation of the five years statute, and if the deed by the Stones to Spight did not embrace the land sold to Norton, the doctrine of lis pendens would not apply.

It is contended by appellants in their fifteenth assignment of error that the three years statute of limitation applies. We do not think such

is the case. The petition of Ellis, in the action against the Stones and others, alleged that Ellis acquired the land in controversy under a conveyance from Williams, who acquired it under a contract with Mrs. Hill, formerly Mrs. Russell; and also a partition between her and Williams, which was binding upon the defendants in the suit of Ellis v. Stone, some of these defendants being the grantors of Spight in the bond for title, under whom the defendants in this action claim.

The judgment in the case of Ellis v. Stone was rendered in favor of Ellis, and presumably upon the theory as set up in his petition. If the Stones and other defendants in the action of Ellis v. Stone were bound by the contract made between Williams and Mrs. Jane Hill and the partition by which Williams got the land in controversy, they would have had no interest in the land to convey to Spight, such state of facts severing their interest from the sovereignty of the soil. For the reasons stated, we do not think that the three years statute of limitation would apply.

After a careful consideration, we conclude that those assignments of error not touched upon in this opinion, as well as appellee's first cross-assignment of error, show no reversible error.

The judgment of the court below will be affirmed, in so far as it authorizes a recovery by the appellee against the defendant Sammann; and will be reversed and rendered in favor of appellees, that defendant Sammann recover nothing on his plea of improvements in good faith. As to the other appellants, the judgment is reversed and the cause remanded.

*Affirmed in part, reversed and rendered in part, and reversed and remanded in part.*