## NEUSTADT et al. v. COLINE OIL CO. et al.

No. 17291. Opinion Filed Nov. 19, 1929. Withdrawn, Corrected, Refiled, and Rehearing Denied Jan. 21, 1930.

Commissioners' Opinion, Division No. 1.

Disney, Wheeler & Alcorn, for plaintiffs in error.

Frank G. Anderson, Geo. M. Green, E. E. McInnis, H. A. Ledbetter, and L. A. Ledbetter, for defendants in error.

TEEHEE, C. On May 26, 1923, plaintiff in error, W. Neustadt, and eleven others. brought suit to recover possession of and to quiet the title to certain realty, and for damages resultant from a wrongful extraction of oil and gas therefrom to their injury in the sum of $2,000,000, in which premises they prayed judgment against about 250 defendants, including the defendants in error Coline Oil Company and others hereinafter named. The realty involved, in the language of real property in this state, is known as a deceased Indian allotment. The land was allotted in the name of the heirs of one Melissa Jacob, a full-blood Choctaw Indian who died about January 15, 1903, prior to the time when she may have received in her own right such moiety of the lands of the Choctaw Nation. and was selected by an administrator of her estate as was by law provided.

With the exception of Neustadt and two others, the plaintiffs were Choctaw Indians

of the full-blood degree, and, including the two others, claimed to be the heirs at law of the deceased allottee, and as such brought the action for the use and benefit of Neustadt, their grantee of said lands, and who also sued in his own right as grantee of said claimants.

The suit was predicated on two causes of action. In their first cause, the claimant Indian plaintiffs in substance alleged their heirship of the estate of the decedent allottee, and as such heirs they had conveyed said property to their coplaintiff, Neustadt, by deeds duly approved by the proper county court as by law provided, and with whom they joined in the suit to establish his right of ownership and possession of said property as against the defendants, who claimed some right, title, and interest therein under certain and various instruments of record which were void and constituted clouds upon Neustadt's title. The deeds of plaintiffs referred to were executed on divers dates in the year of 1922.

In their second cause, plaintiffs in substance alleged that defendants have been in the unlawful and wrongful possession of the property since March 11, 1904, and have extracted therefrom large quantities of oil and gas to their injury and damage in the sum of $2,000,000.

To the suit certain of the defendants entered disclaimers, and certain of the others were dismissed therefrom, which also eliminated from the suit a certain part of the property. The other defendants, namely, the Coline Oil Company, S. T. Bledsoe, W. E. Hodges, J. S. Cullinan, W. B. Johnson, H. W. McGill, W. A. Ledbetter, W. P. Terrell, Jr., W. F. Wolverton, W. A. Miller, Hettie Norman, individually and as administratrix of the estate of Thomas Norman, deceased, Hettie B. Norman, Hugh W. McGill as trustee for S. T. Bledsoe, W. A. Ledbetter, W. P. Terrell, Jr., Thomas Norman, Johnson & McGill, a firm composed of W. B. Johnson and Hugh W. McGill, the defendants in error here, by answer generally denied plaintiffs' claims of ownership of the property, and further pleaded ownership in themselves and adverse possession thereof since March 11, 1904, through a purchase of the property at that date from one Davis Peter as the sole heir of the estate, the statute of limitations, matter constituting equitable estoppel of plaintiffs to assert their claims of ownership of said property, and res judicata.

To all new matter contained in the several answers, plaintiffs replied by denial thereof, and further reiterated their right of ownership by virtue of proceedings in the county court of Pushmataha county in 1922, whereunder the heirship of the claimant Indians was determined and decreed, to which proceedings they alleged that defendants were parties defendant, and wherein the decree of heirship had become final and thereby said defendants were concluded in their assertions of ownership of said property.

By agreement of the parties, the question of damages was reserved from consideration in the case, leaving at issue for trial the question of ownership of the property, which was tried to a jury. At the trial, the court by instruction eliminated from consideration by the jury all evidence upon the question of res judicata pleaded by the defendants, the court holding as a matter of law that the plea was without application to the case. The trial resulted in a jury verdict and judgment thereon for defendants.

Following lodgment of the appeal in this court, defendants made their plea of res judicata the basis of a motion to dismiss the appeal, or for the affirmance of the judgment on that ground, to which motion plaintiffs filed their response, and wherein both parties by briefs submitted argument at length in support of their respective contentions in that relation. This motion was by the court denied by order pro forma entered in March, 1927. Defendants again present their plea of res judicata and urge upon us the sufficiency thereof to dispose of the case in their favor, which, in effect, is a renewal of their motion referred to. This renewal, as we take it, is based on the rule as laid down in Kessler v. Eldred, 206 U. S. 285, 27 Sup. Ct. 611, 51 L. Ed. 1065, to wit:

"Rights between litigants once established by the final judgment of a court of competent jurisdiction must be recognized in every way, and wherever the judgment is entitled to respect, by those who are bound thereby."

Subsequent to our denial thereof, it has been held in a case of substantially the same state of facts in respect to the question of privity of the plaintiffs here with the grantor, Davis Peter, that such a plea was without application. Ledbetter v. Wesley, 23 Fed. (2nd) 81. The rule deducible from that case may be stated as follows:

Where an action is brought by the United States in its fiduciary capacity to cancel a conveyance of a Choctaw Indian deceased allotment as being violative of the federal

restrictions upon the alienation thereof by the heir of the decedent allottee, and a demurrer to the sufficiency of the petition to state a cause of action is sustained, and the judgment rendered thereon becomes final, the same is a judgment upon the merits of the action and is res judicata only as to the party grantor in such conveyance and those in privity with him.

As the claimant Indian plaintiffs here do not rest their claims of interest to the property involved through the grantor, Davis Peter, or those in privity with him, by the rule of that case, therefore, our prior disposition of the point thus re-urged upon us by defendants finds full support and need not be again considered.

For a reversal of the judgment, plaintiffs first present and urge the following alleged errors of the court, to wit:

"Said court erred in overruling the motion of plaintiffs in error for new trial.

"Said court erred in overruling the demurrer of plaintiffs in error to the evidence of defendants in error and in refusing to strike the evidence of defendants in error.

"That there is error in the judgment of said court and the verdict of said jury in that there is no evidence reasonably tending to support the verdict of the jury in favor of the defendants in error."

These assignments of alleged error are by plaintiffs conceded to be resolved into the general proposition that there is no competent evidence reasonably tending to support the verdict and judgment. Thereunder plaintiffs say:

"The argument in this case reduces itself to a very simple proposition. The jury having decided for the defendants, we recognize the burden laid upon us that we cannot ask this court to weigh the evidence, but must demonstrate to this court that there is no evidence reasonably tending to support the verdict."

It is thus recognized that the case in this relation is controlled by the oft-repeated rule that if there is any competent evidence in the record reasonably tending to support the verdict of the jury, the judgment of the court based thereon will be affirmed.

This challenge of the record arises upon plaintiffs' demurrer to defendants' evidence. The points urged hereunder have particular relation to three phases of defendants' evidence and go to the oral testimony of one of defendants' witnesses, to a declaration in the form of an affidavit by one Madison Jefferson of the relationship of the grantor, Davis Peter, to the decedent allottee, and to a like declaration in the form

of a recital contained in the deed of Davis Peter to defendants Ledbetter and Terrell.

In their argument, the parties have at length analyzed the evidence, each pointing out wherein their respective contentions of ownership find support thereunder, but as both sides are practically in agreement that without that certain particular evidence referred to adduced by the defendants the verdict of the jury would be without support, we confine our consideration to that evidence, and first direct our attention to the oral testimony. This was given by one Wilsey Clay, a woman 84 years of age at the time of the trial, who was born, reared, and lived at a point that may be considered as within the community in which the decedent allottee, Melissa Jacobs, and many of her relatives lived, and who had known the decedent allottee from the time of her majority. Thus her testimony had to do with the pedigree of the decedent allottee, and went to show a want of relationship of the claimant Indian plaintiffs to said allottee. Complaint thereof by plaintiffs is predicated on the ground that as the witness did not show her relationship either by blood or affinity to the decedent allottee nor state as to who her informant or informants may have been for the statements made in relation to pedigree, her testimony was hearsay and incompetent as a matter of law, for which reason their first challenge of its competency by motion to strike should have been sustained. In this they rely on the rule of admissibility of declaratory or hearsay evidence upon the question of pedigree as stated by this court in the case of In re Estate of McDade (Walker v. Tyner), 95 Okla. 120, 218 Pac. 532, to wit:

"Pedigree may be proved by hearsay testimony, and evidence of declarations of particular facts, such as births, marriages, and deaths made ante litem motam, by a person since deceased, who was related by blood or affinity with some branch of the family the pedigree respecting which is in question, is admissible in evidence."

Other cases are cited which are to the same effect.

If the rule, as thus stated, in application rendered the testimony of this witness vulnerable in the premise of complaint, plaintiffs' motion to strike the same should have been sustained. However, we cannot agree with plaintiffs that Wilsey Clay's testimony is thus vulnerable. An examination thereof shows that she was testifying from personal knowledge, and not from what others had said to her concerning the pedigree of Melissa Jacobs. She had known Melissa's

parents for years, and had known Melissa for a number of years dating from the time of her majority, she having lived at witness' home for some time. It thus appears to have been based on an intimate acquaintanceship, and therefore comes within the rule as stated in Hoyt v. Lightbody, 98 Minn. 189, 108 N. W. 843, 116 A. S. R. 358, 8 Ann. Cas. 984, to wit:

"The evidence of a witness whose knowledge with reference to the subject was derived from an intimate acquaintance with the family is admissible as to such facts of family history as marriage, kinship, name, and death."

In 1 Elliot on Evidence, 489, this class of testimony is referred to as personal knowledge evidence, and in 2 Jones on Evidence, 706, as being within the ordinary rules of evidence.

In the case of In re Hurlburt's Estate, 68 Vt. 366, 35 Atl. 77, the court, addressing itself to this class of evidence, used this language:

"The rule admitting any kind of hearsay evidence in cases of this kind had its origin in the general necessity growing out of the extreme difficulty of establishing pedigree, especially after the long lapse of time, and when, as is sometimes the case, the family connection must be traced through several generations. When all the facts relative to a question of pedigree are within the knowledge of living witnesses, and none of such facts are derived from the declarations of deceased members of the family, there is no necessity for resorting to so-called 'family reputation,' created wholly by the living, any more than in any other kind of case not involving pedigree. The testimony of such witnesses can be produced in court, and from it the triors can find such facts as they think it proves."

And in McLain v. Allen, 95 S. C. 152, 79 S. E. 1, citing Hoyt v. Lightbody, it was said:

'The second exception imputes error in admitting over appellants' objection to the declaration of a stranger as to the pedigrees of Henry Davis, Eliza Villepigue, and Allen. Mary Carter did not testify as to the declarations of any other party; but her testimony was as to facts within her own knowledge, the objection was as to her testimony that she was not related to the parties, and could not testify as to family relations. The appellant has misconstrued the rules applicable to the introduction of declarations as to relationship. It is not necessary to show that the witness testifying is related to any of the parties, whose relationship is in question. There is no authority that so holds. Any person acquainted with a family and reputation in the fam-

ily can testify as to the pedigree and relationship of members of the family, and as to common rumor in the community as to this pedigree and relationship, and as to the declarations of the family, as to pedigree, kinship, relationship, marriages, births, etc. The witness' testimony was as to facts known to her and it was competent for her to testify as to her familiarity with the family and the reputation in the family in regard to the relationship in question."

In the light of these cases we hold that this evidence was competent and not subject to be stricken, as is contended by plaintiffs.

In their complaint of the Madison Jefferson affidavit, plaintiffs contend that as it was not shown that deponent was related to the decedent allottee, the declaration that the grantor, Davis Peter, was the only living relative of the decedent allottee, Melissa Jacobs, was, under the rule of the McDade Case, incompetent, and for that reason the affidavit should have been rejected upon their general objection to its admission. The affidavit was made on November 12, 1903, several months prior to the execution of the deed by Davis Peter, and was based on the fact of an intimate acquaintanceship with Melissa's family. The deponent died long prior to the trial of this case. It is to be observed that certain of the claimant Indian plaintiffs sought to establish their right of ownership of the property involved through their relationship to the deponent on the theory that he was one of the heirs of the estate of the decedent allottee, Melissa Jacobs. This claim of relationship of such claimant Indian plaintiffs with the deponent, we think, rendered the declaration competent and thus placed it without the rule relied on by plaintiffs. Overby v. Johnston (Tex. Civ. App.) 94 S. W. 131.

In the Overby Case, one of the questions involved the admissibility of a declaration that the propositus, George J. Johnstone, was never married and thus was without lineal heirs. It was not shown that the declarant was related to the propositus, but was related to the appellees whose claim of interest in the property in litigation rested in collateral succession. The court held:

"Declarations of a deceased person are admissible to prove matters of family history, etc., on an issue as to the title to land although it is not first shown that declarant was related either by blood or marriage to the person who died seised; it is sufficient if he be related to the alleged heir."

In the discussion of the reasons for the rule thus laid down, the court observed:

"Is the proposition that the declarant must be shown to be related to George J. Johnstone sound? Greenleaf (14th Ed., sec. 103) declares 'that the law resorts to hearsay evidence in cases of pedigree upon the ground of the interest of the declarants in the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. The rule of admission is therefore restricted to the declarations of the deceased persons who were related by blood or marriage to the person, and therefore interested in the succession in question.' Both the reason and the rule thus laid down are quoted and approved by our Supreme Court in Fowler v. Simpson, 79 Tex. 611, 15 S. W. 682, 23 Am. St. Rep. 370. The text is also quoted and applied by the Supreme Court of·the United States in Blackburn v. Crawford, 3 Wall. 175, 18 L. Ed. 186. On the other hand, a much broader rule is laid down in the late work of Prof. Wigmore on Evidence (volume 2, par. 1491), as follows: 'It follows in applying the foregoing principle that where an alleged relationship between Doe and Roe is to be testified to, a relation of Doe may speak to it, because it concerns the relationships of Doe's family, while a relation of Roe may equally speak to it, because it concerns the relationships of Roe's family; hence, all that is required of the declarant is a connection with either one or the other, but not with both. This truth, however, has been obscured by what may be regarded as erroneous rulings. The question being whether Doe is related to Roe (for example, so as to share in Roe's inheritance), the argument has been that it would be idle to require merely that the declarant should be shown to be related to Doe alone: because, then, any family could connect itself with any other by its member's mere assertion of the relationship. But the proper way to approach the question seems to be a different one, and is as follows: Any member of Doe's line may declare as to the relationships (i. e. memberships) of that family, and any member of Roe's line may declare as to the relationships (i. e. memberships) of that family; and the qualifications of the declarant as such member, must of course be shown beforehand, like the qualifications of any witness.' The author cites a number of decisions which support this broader rule, among which is the case of Sitler v. Gehr, 105 Pa. 577, 51 Am. Rep. 207, which is especially valuable for its review of numerous cases bearing on this question. The conclusion of the court in that case as to the state of the authorities is summed up in the following language: 'It will be seen that those of them which bear upon this question at all do not go beyond the admitted principle that, before declarations of deceased persons can be received in questions of pedigree, the declarant must be shown aliunde to be related to some branch of the family as to which the declarations are offered,' the decision being that witnesses were permitted to give in evidence declarations of a deceased person shown to be related to the plaintiff, but not to the person from whom the succession was sought to be made out. We think the rule laid down by Prof. Wigmore is supported by the better reason and should be adopted in this state. The universally recognized prerequistes to the admission in evidence of such declarations to prove matters of family history are, first, it must be proved by evidence aliunde the statement itself that the declarant was related to the family about which he spoke; second, that the statements were made ante litem motam; and, third, that the declarant is dead. In this case the declarant Edmond Finch, being related to the appellee Johnston and therefore a member of his family, and supposedly interested in knowing the history and affairs of such family, which would include its antecedents, his declarations made at a time when this cause of action had not arisen, ought upon every principle to be admitted in evidence. While the rule announced in Greenleaf and heretofore quoted has been construed in such manner as to support appellants' contention, and while, as already shown, it has been quoted with approval by our Supreme Court, yet we are not aware of any decision by that court involving the precise question under consideration; but on the other hand, the decisions, when the facts of each case are examined, appear at least to be not inconsistent with the views we have expressed. This is specially true of the cases of Fowler v. Simpson, supra, and Summerhill v. Darrow, 94 Tex. 71, 57 S. W. 942."

As we see it, the rule of that case is both logically sound and finds support by competent authorities. We adopt it as a rule of evidence in this class of cases and conclude that thereunder the affidavit in question was competent and properly admitted in evidence.

Plaintiffs next assert the incompetency of the deed of Davis Peter to the defendants Ledbetter and Terrell, through which all of the defendants at the bar claim ownership of the property involved, in respect to the recital of pedigree therein contained as evidence upon the issue. The deed was executed on March 11, 1904, and purported to convey to the defendants named all of the right, title and interest of the deceased allottee, Melissa Jacobs, in and to the land constituting her allotment of Choctaw lands to which the grantor came into ownership by succession. It · recites that Melissa Jacobs departed this life on January 15, 1903, unmarried, intestate and without issue of her body, and that she left no heirs

surviving, either lineal or collateral, except the grantor, Davis Peter, who was the sole heir. As in the case of the affidavit above referred to, the grantor had departed this life long prior to the trial of this case.

Plaintiffs' contention is that this recital of the relationship of the grantor to the decedent allottee is self-serving and thus incompetent. In this, plaintiffs rely on O'Neil v. Lauderdale, 80 Okla. 170, 195 Pac. 121, wherein the court held that an affidavit by the grantor at the time of the sale of the property to the effect that she was the only heir was incompetent as a self-serving declaration of the grantor made during her lifetime and in her interest, and on other authorities to the same effect. Examination of the record in that case will show that the affidavit there had been in existence approximately six years to the time of the filing of the suit, which fact alone is sufficient to distinguish that case from the one in hand, so that the conclusion we shall reach upon this phase under the facts in relation to the instrument here involved cannot be said to be in conflict with the ruling relied on by plaintiffs. Thus that case is not an authority for plaintiffs' position.

On the other hand, defendants contend that the recital in question, on the theory that the instrument was an ancient deed, is competent and rely on the rule as stated in Rollins v. Atlantic City R. Co., 73 N. J. L. 64, 62 A. 929, to wit:

"A recital of pedigree, contained in an ancient deed, is of itself evidence of the matter recited if the deed was made by one related to a branch of the family which the pedigree concerns."

A number of other cases are cited by defendants in which the rule of antiquity was applied. In one of these, Fielder v. Pemberton, 136 Tenn. 440, 189 S. W. 873, the court, citing many adjudicated cases, addressing itself to the rule, used this language:

"The weight of authority is that the recital of heirship or pedigree in an ancient deed, where no suspicious circumstances are found, and especially where corroboration appears by the payment of taxes, acts of control, ownership, or possession of the land, or even as in some cases by similarity of family name as shown in the deed itself, such recital is admissible in evidence against all persons, including strangers to that title."

The other cases cited by defendants contain like observations.

To this contention of defendants, plaintiffs respond that the rule has no present application for the reason that the deed had not been extant for the requisite period of time, this being fixed at not less than 30 years, citing 3 Jones on Evidence (2nd Ed.) 2050, paragraph 1113, wherein the rule of antiquity is stated as follows:

"The rule is well established that an ancient deed may be admitted in evidence without direct proof of its execution, provided it appears to be of the age of at least thirty years, is found in proper custody, and either possession under it is shown or there is some other corroborative evidence of authenticity freeing it from all just grounds of suspicion."

Plaintiffs, therefore, make the point that as the documents involved in the cases cited by defendants had been in existence for periods ranging from not less than 30 years and upwards, the authorities thus relied on by them are not relevant.

In 3 Wigmore on Evidence, 2899, section 2137, the author says that the reasons for the rule are two-fold, to wit:

"First, after a long lapse of time, ordinary testimonial evidence from those who saw the document's execution or knew the style of handwriting or heard the party admit the execution, is practically unavailable, and a necessity always exists for resorting to circumstantial evidence. Secondly, the circumstance of age—or long existence—of the document, together with its place of custody, its unsuspicious appearance, and perhaps other circumstances, suffice in combination, as evidence to be submitted to the jury."

And in the following section 2138, the author continues, to wit:

"Since the chief reason for the rule is the impossibility of obtaining living testimony to the signing or to the handwriting, the necessity does not arise until time has made such testimony unavailable. At first, this requirement was satisfied by the simple and indefinite notion that the deed must be 'ancient.' But a more definite standard naturally became desirable. Since the lack of living witnesses to the document was the justifying fact, and since such witnesses might be assumed to have been at least of age at the time of execution, they would presumably have disappeared from the stage of life after the lapse of forty or at most fifty years. Accordingly, the period of forty years came, by the 1700s, to be taken as the time when a document was treated as 'ancient' under this rule. But this reckoning was too strict, because the witnesses were more likely to have been mature persons, and therefore at least thirty years of age; and another thirty years would suffice to bring them near the end of their span. Ever since the second half of the 1700s, therefore, the period of thirty years has sufficed to constitute an 'ancient' document; except under some special statutory rules."

**A** number of states wherein the rule has been modified by statute are set out at page 2913 of the same work in the notes to section 2143. In a note in the same work at page 2901, the author cites Burke v. Ryan, 1 Dall. 94, 1 L. Ed. 51, and Boykin v. Wright, 11 La. Ann. 531, wherein deeds of a less age than 30 years were admitted, in the first case the deed having been in existence for 20 years, and in the other for 27 years.

In McGennis v. Allison, 10 S. & R. 197, the Supreme Court of Pennsylvania suggested that the period of limitation might be sufficient to bring a deed within the rule of antiquity, the court using this language:

"This is a very ancient deed, of more than 50 years, where there is a presumption that the witness is dead, and if possession had gone with it, it would prove itself, and perhaps there would be no occasion to call the subscribing witnesses, if they were ever in full life. Thirty years seems the fixed time, a shorter period, 25, perhaps 21, the period of limitation, might be sufficient, but of this I give no opinion."

In Homer v. Cilley, 14 N. H. 85, in which jurisdiction the period of limitation was 20 years, the court in its syllabus said:

"It is the accompanying possession alone which establishes the authenticity of an ancient deed and 30 years has been held to be the lowest period in which a deed may be admitted as an ancient deed. Whether 20 years would be sufficient in this state without other proof, quaere?"

In the body of the opinion, it was said:

"There was no evidence tending to show possession for more than 13 years. Thirty years has been held to be the lowest period. If 20 might be sufficient by analogy to our statute of limitations, the evidence falls far short of it."

In Wood v. Montevallo, etc., Co., 84 Ala. 560, 5 A. S. R. 393, a receipt more than 20 years old was admitted in evidence as an ancient document.

In Blackburn v. Norman (Tex. Civ. App.) 30 S. W. 718, a deed 25 years old, purported to have been executed by an attorney in fact, was admitted in evidence on the presumption that the same was executed under a written power of attorney which was not produced.

In McCulloch County Land & Cattle Company v. Whitefort, 21 Tex. Civ. App. 314, 50 S. W. 1042, a deed 20 years old likewise executed was admitted in evidence under the rule of presumption as in the Blackburn Case. See, also, Wille v. Ellis, 22 Tex. Civ. App. 462, 54 S. W. 922, to the same effect.

We may here properly observe that in so far as the rule of antiquity affects the admissibility of a deed as a link in the chain of title, it has no application in our state, for by section 5267, C. O. S. 1921, it is expressly provided that all instruments affecting real estate executed substantially as is by law directed "shall be received in all courts without further proof of their execution," and this is true even if the execution of a deed be denied under oath. Dyal v. Norton, 47 Okla. 794, 150 Pac. 703. In respect to the phase under consideration we find no express provision of law in this state as is the case in cited jurisdictions in a note in 2 Wigmore on Evidence, 1927, unless it may be said that our law upon title by prescription operates as a limitation of the rule which had its origin in the common law and rested in necessity. In respect to the effect of recitals in ancient documents, the author in 3 Jones on Evidence (2nd Ed.) 2050, paragraph 1113, says:

"But it must be borne in mind that the rule as to ancient documents does not import any verity to the recitals contained in such documents. The documents themselves are admitted as genuine, and the ancient document rule, whether statutory or not, has no further effect. The recitals contained in such documents gain such evidentiary weight as they may possess from the rules governing presumptions in general and the fact of admission in view of the surrounding circumstances of the case.

"The rule is universally recognized that recitals in ancient deeds are evidence of facts recited therein as against strangers to the title, provided the proffer of such recital is accompanied by evidence of possession under the deed or other corroborating circumstances sufficient to warrant introduction of the instrument itself under the ancient document rule. Such recitals are admissible on the theory that, if untrue, they would long since have been disproved, and that time and possession have raised the presumption of this truth, admissible even against strangers."

Under this statement a long list of adjudicated cases are collated, there being among them the Rollins Case, and excepting the Fielder Case, all the others cited by defendants. In one of the collated cases, Scharff v. Keener, 64 Pa. St. 376, reference is made to Paxton v. Price, 1 Yeates (Pa.) 500, in which the deed had been in existence for a period of less than 30 years. The court, commenting on that case, said:

"In citing Paxton v. Price, supra, it is not intended to assert the principles there decided, as applicable to every case, modern

120

in its circumstances. In that case the deed was but nine years old when it was received in evidence and the recitals held to be evidence of pedigree. It may be that in matters of very recent occurrence, where the evidence of pedigree is easily obtainable, cases may arise where the recitals in such a recent deed would not be entitled to the weight given to them in Paxton v. Price."

In Jackson v. Cooley (N. Y.) 8 Johns. 128, the effect of the decision was the admission of recitals of pedigree contained in the power of attorney through oral testimony of the attorney in fact therein named, the instrument being of the age of 16 years. In McMahon v. McDonald, 51 Tex. Civ. App. 613, 113 S. W. 322, recitals contained in a deed 26 years old of prior conveyances of the property involved in that litigation were admitted in evidence under the principle of the rule of antiquity.

In the Woods Case, supra, recitals contained in a receipt 20 years old ackowledging satisfaction of a judgment by the attorney of record for the plaintiff in that case, were admitted under the principle of the rule without further proof of its execution.

In the Wille Case, supra, recitals contained in a bond for title 20 years of age to the effect that a third party had negotiated the transaction for the sale of certain lands to another, and whereunder the witness testified that the sale had been completed and the purchaser went into possession of the property and thus continued in such possession for the period of limitation, were rejected by the trial court. The appellate court, holding otherwise, said:

"We think the court erred in not admitting this bond for title in evidence. The instrument, at the time it was offered in evidence, was over 20 years of age. That fact, in connection with the evidence of the witness Cassedy showing that the grantors therein, the Stones, recognized its validity, was sufficient to authorize the court to presume the existence of the power under which the bond was executed. Land and Cattle Co. v. Whitefort, 21 Texas Civ. App. 314. But, independent of this view, we think the bond for title was admissible as a memorandum of title, defining the boundaries of the land of the possessors, under the ten years statute of limitation. It has been held that a void deed, duly registered, is a sufficient memorandum of title under the ten years statute to entitle the possessor under such an instrument to recover to the extent of the boundaries therein defined. Wofford v. McKinna, 23 Texas, 46; Schleicher v. Gatlin, 85 Texas, 274; Lambert v. Weir, 27 Texas, 365; Charles v. Safford, 13 Texas, 109. And, as held in Wofford v. McKinna, supra, page 44, and Cantagrel v. Von Lupin, 58 Texas, 572,—in construing the rights of the possessor under the ten years statute, where he claims to the extent of the boundaries defined in the conveyance,—the power under which the instrument is executed need not be produced."

From those cases, it would appear that the rule, where not otherwise modified, in either relation is not to be regarded as being inflexible, and, therefore, the recitals of a deed existent for a period of less than 30 years, in the circumstances of the particular case, may be deemed to come within the principle of the rule of antiquity, as where the grantees therein went into immediate possession of the property thereby conveyed, and they and their privies have continued in the exercise of dominion and control thereover by open, visible, continuous, and exclusive possession with claim of ownership thereof for the period of time requisite to ripen a prescriptive title, as was expressly held in the Wille Case.

The deed here involved was immediately placed of record, and thus for 19 years to the filing of this suit it has been a public document with notice of its contents to those who subsequently thereto may be concerned in transactions affecting the title of the property thereby conveyed, with numerous changes in the possession and ownership of the whole or parts thereof during that period without protest from any of the parties plaintiff in this action. That was longer than the period fixed by law in which an undisturbed possession and asserted ownership of property may by prescription ripen into title, whether the point be considered as controlled either by the seven year provision of the Arkansas law in force at the date of the deed, or by the present law, which in the circumstances of this case would be 15 years. As to the former, see Beeman v. Holt, 109 Okla. 256, 235 Pac. 167, and Foreman v. Marks, 117 Okla. 285, 246 Pac. 441; as to the latter, see sections 183 and 8554, C. O. S. 1921; Wade v. Crouch & Edwards, 14 Okla. 593, 78 Pac. 91, and other cases cited under the particular sections.

During that period, so far as the record discloses, plaintiffs were resting under no disability in respect to their right of challenge. The fact that the plaintiffs, with the exception of three of them, are full-blood members of the Choctaw Tribe of Indians, does not affect the case in respect to the question of disability, as the land at the time of conveyance was unrestricted. Mullen v. United States, 224 U. S. 448, 32 Sup. Ct. Rep. 494, 56 L. Ed. 834. Thus there

appears to be no legal reason to prevent the operation of the principle of the rule of antiquity upon the phase of the deed in question whereunder the grantees and their privies have been in the adverse possession of the realty thereby conveyed, and exercising dominion thereover to the exclusion of all others for more than the statutory prescriptive period. We are, therefore, of the opinion that the recital of relationship of the grantor to the transmitting ancestor contained in the Davis Peter deed is competent as evidence upon the particular controverted issue of fact in relation to which it was offered.

Other points are urged upon us as being fraught with reversible error. These relate to the admission in evidence of the proceedings had in the federal court in support of defendants' plea of res judicata, rejection of the heirship proceedings offered in support of plaintiffs' plea of res judicata, and rejection of certain of the administration proceedings on the estate of Melissa Jacobs, deceased, offered by plaintiffs. These require no more than passing notice.

Of the federal court proceedings, it is sufficient to say that no error was committed in the admission thereof, as the same had to do only with the defense of res judicata interposed. Upon the introduction thereof, the matter was resolved into a question of law. This the court determined adversely to the defendants and properly instructed the jury to disregard the same in their consideration of the questions of fact submitted for their determination.

As to the heirship proceedings, it also suffices to say that rejection of the offer of such proceedings in evidence was proper. Homer v. Lester, 95 Okla. 284, 219 Pac. 392; In re Jackson's Estate, 117 Okla. 151, 245 Pac. 874.

In respect to certain of the administration proceedings on the estate of Melissa Jacobs, deceased, there was no error in the rejection of the offer thereof in evidence, as the same, being an inventory of the estate, merely would have shown that the land in controversy had been filed by Madison Jefferson and had been sold at the time of such inventory on September 28, 1905, and therefore had no relevancy to the issues before the court. If of any value, the same would have been more favorable to defendants than to plaintiffs.

Upon the whole record, therefore, we are of the opinion that there is contained therein competent evidence reasonably tending to support the verdict of the jury, for which reason, under the general rule, the judgment of the district court is affirmed.

BENNETT, HERR, HALL, LEACH, FOSTER, JEFFREY, and DIFFENDAFFER, Commissioners, concur. REID, C., dissents.

By the Court: It is so ordered.

Note—See "Evidence," 22 C. J. §229, p. 243, n. 50; §233, p. 246, n. 90; §1166, p. 947, n. 84. "Judgments," 34 C. J. §1220, p. 799, n. 80; §1480, p. 1043, n. 14.